STATE EX REL. RAILROAD AND WAREHOUSE
COMMISSION v. R. C. MEES.
WILLIAM T. TOWEY, INTERVENER.[1]

October 5, 1951.

No. 35,494.

[1]Reported in 49 N. W. (2d) 386.

*Stacker & Stacker* and *Carl K. Lifson,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Benedict S. Deinard,* Special Assistant Attorney General, for petitioner-respondent.

CHRISTIANSON, JUSTICE.

This appeal raises issues concerning the power of the railroad and warehouse commission to initiate and conduct an ex parte investigation into the management of a carrier subject to its supervision without giving notice to the carrier or joining it as a party in an adversary proceeding, and its power to issue compulsory process in aid thereof to persons not subject to its regulation.

On August 22, 1950, at one of its regular meetings, the railroad and warehouse commission, hereinafter referred to as the commission, upon its own motion and without issuing a complaint, passed the following resolution authorizing an investigation into the control and management of the Twin City Rapid Transit Company:

"Be It Resolved: That the Chairman of the Commission, on its behalf, be and is hereby authorized to continue the stock investigation being made relating to the Twin City Rapid Transit Company and its subsidiary organizations, for the purpose of ascertaining stock ownership and the values of the stocks of said holding company and its subsidiaries furnishing street car and auto transportation services in the Cities of Minneapolis, St. Paul and adjoining areas, the information so obtained to be used by the Commission, as necessary, in any matters now pending before the Commission or over which it has jurisdiction involving said Twin City Rapid Transit Company and its subsidiary companies.[2]

"In the conduct of said investigation the Commission does hereby authorize the issuance of subpoenas pursuant to the law, in order to obtain the presence of witnesses and the production of such records as are necessary to conduct and complete said investigation of stock and any and all other matters relating to the proper responsibility of management in the conduct of the business of the Twin City Rapid Transit Company."

The investigation was commenced, witnesses appeared and testified before the commission, and the testimony was recorded. Desiring to determine the identity of the beneficial owners of a large block of transit company stock held in the "street name" of the

[2]The Twin City Rapid Transit Company is a Minnesota corporation. Among the subsidiary corporations which it wholly owns and controls are the Minneapolis Street Railway Company, the St. Paul City Railway Company, the Minneapolis & St. Paul Suburban Railroad Company, and the Twin City Motor Bus Company, each engaged in the business of carrying passengers for hire. There was pending before the commission an application by the Twin City Motor Bus Company for the fixing of its rates of fare at the time the investigation in question was commenced.

brokerage firm of Paine, Webber, Jackson & Curtis, hereinafter referred to as the brokerage firm, the commission directed a subpoena *duces tecum* to R. C. Mees, the resident partner of that firm. The subpoena ordered Mees to produce all books, records, and documents of the brokerage firm relating to the names of persons, firms, and corporations who bought or sold transit company stock from January 1, 1947, to September 12, 1950; the amounts of the stock so bought and sold; and the names of the persons, firms, or corporations owning the transit company stock whose record ownership appeared in the name of the brokerage firm during that period. On the return day of the subpoena, Mees appeared with counsel and respectfully refused to obey the subpoena, although the commission voluntarily offered to reduce the period of time covered by the subpoena so as to have it commence August 1, 1949, rather than January 1, 1947. Thereafter, the commission petitioned the district court for Hennepin county to issue an order to show cause why the subpoena should not be obeyed and to issue an appropriate order directing compliance.

The court issued the order to show cause, and, at the date set for the hearing, William T. Towey served upon the commission a complaint in intervention requesting that the petition be dismissed and the subpoena quashed. Mr. Towey, who is a stockholder of the transit company, had acquired some of his stock in that company through the services of the brokerage firm. The complaint in intervention stated that the commission was without power to issue compulsory process in an ex parte, nonadversary proceeding, and that compliance with the subpoena would prejudice Towey's right to have his business transactions remain confidential.

The only witness testifying before the district court was the chairman of the commission, who was called for cross-examination under the statute by counsel for Mees. No evidence was offered by or on behalf of Mees or by Towey, hereinafter referred to as intervener. Transcripts of the testimony previously taken at the commission's hearings in its pending investigation were offered and received in evidence on behalf of the commission. The commission

moved that the complaint in intervention be dismissed on the ground that no cause of action was stated. Thereafter, the court entered an order granting the commission's petition, dismissing the complaint in intervention, and directing Mees to comply with the subpoena. Intervener alone appeals from this order.

■ Intervener recognizes that the commission's subpoena, if valid, supervenes any desire on his part to keep the requested information confidential. He concedes that the stockbroker-client relationship does not give rise to a privilege to refuse to divulge confidential communications, as does the attorney-client relationship, or that existing between doctor and patient, clergyman and penitent, or husband and wife.[3] However, he argues that, because the investigation was ex parte, nonadversary, and not brought to rectify a specific breach of statute, it failed to satisfy the requirements of the authorizing statutes and hence was void. Therefore, he maintains, the subpoena issued in pursuance of the investigation is likewise void and without compulsion.

The commission agrees that its powers, like those of all administrative agencies, are exclusively derived from and limited by the authorizing statutes,[4] but argues that ample authority can be found to sustain the investigation as it was conducted. It cites, among other sections, § 216.21 to support this contention. This section provides:

"The commission *shall on its own motion investigate any matter relating to the management by any carrier* or warehouseman *of its business,* or the reasonableness of any or all rates, schedule of rates, fares, charges, rules, regulations, or classifications *when in its judgment the public interest requires it.* If any such rates, schedule of

---

[3]McMann v. Securities & Exch. Comm. (2 Cir.) 87 F. (2d) 377, 109 A. L. R. 1445; Capital Co. v. Fox (2 Cir.) 85 F. (2d) 97, 101, 106 A. L. R. 376; see, State ex rel. Gustafson Co. v. Crookston Trust Co. 222 Minn. 17, 23, 22 N. W. (2d) 911, 916.

[4]Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 606, 607, 277 N. W. 221, 225; Lenihan v. Tri-State Tel. & Tel. Co. 208 Minn. 172, 184, 293 N. W. 601, 607; 5 Dunnell, Dig. & Supp. § 7998.

rates, fares, charges, rules, classification, or regulations are found unreasonable or discriminatory, the commission shall find what is reasonable under the circumstances and may make an entire new schedule and adjustment of any or all rates, schedule of rates, fares, charges, rules, regulations, and classifications under consideration in such investigation and its order shall fix the date when such rates, schedule of rates, fares, charges, rules, regulations, and classifications shall go into effect. *Before making any order under the provisions of this section,* the carrier shall have an opportunity to be heard, upon such notice as the commission shall deem reasonable. The rates established under proceedings instituted under this section shall be in force during the pendency of any appeal or other proceeding to review the action of the commission." (Italics supplied.)[5]

The dispute over the interpretation of this section centers upon what procedural steps are required to satisfy its terms, and does not concern the problem of what subjects of investigation properly come within its scope. Intervener concedes that the information sought is relevant and material to the purpose of this type of investigation if the commission has the power to conduct the investigation in the manner which has been followed. His position is that the section authorizes only investigations which are quasi-judicial in form, and that the commission's investigation failed to meet the requirements of a quasi-judicial proceeding.

Intervener's argument is grounded upon the theory that all powers of an administrative agency are either executive, quasi-legislative, or quasi-judicial in nature, and each power has the incidents and limitations of the particular category into which it falls. As evidence of a legislative intent to authorize only quasi-judicial investigations under § 216.21, he cites the language of the

[5]The parties do not dispute the commission's supervisory jurisdiction over the transit company. They concede, and the trial court found as a fact, that the operations of the transit company extend beyond the "limits of any municipality or municipalities" so as to constitute it a carrier within the definition of § 216.06.

section which mentions such elements of a quasi-judicial proceeding as notice, opportunity of hearing, order and findings of the commission, and provision in case of an appeal. He also points out that the two preceding sections (§§ 216.19, 216.20) of the chapter provide for investigations of similar subjects upon complaint of third parties, or of the attorney general, and that those sections clearly deal exclusively with quasi-judicial proceedings.

Assuming intervener's theory to be correct, we cannot agree with his conclusion that only quasi-judicial investigations are authorized by § 216.21. While it is clear that the section requires a quasi-judicial proceeding before the commission can issue an order under the provisions of the section, it is important to note the express qualification to the requirement. It is necessary only "Before making any order," etc. Nothing in the section requires that a hearing be held at any particular stage of the investigation, or that any hearing be held where, as here, no order is contemplated. As for the position of § 216.21 in the sequence of sections in the chapter, it does not compel the conclusion that only quasi-judicial investigations were contemplated. When the commission utilizes this section for purposes of issuing an order, it must satisfy procedural requirements very similar to those imposed in proceedings instituted under the two preceding sections. Unquestionably, to this extent, § 216.21 carries out an orderly and logical statutory sequence. However, the juxtaposition of the sections does not prevent separate provision for an investigation not quasi-judicial in nature.

Intervener recognizes that an administrative agency such as the commission may be delegated the power to conduct investigations which are no part of the quasi-judicial function. Oftentimes an administrative agency is given the investigatory power to aid it in promulgating new regulations or in recommending legislative changes.[6] Nonquasi-judicial functions play an important part in the duties of most administrative bodies. For example, § 216.12 requires the commission to—

---

[6]See the extensive list cited in Handler, *The Constitutionality of Investigations by the Federal Trade Commission: II*, 28 Col. L. Rev. 905, 925-929.

"inquire into the management of the business of all carriers * * * subject to its supervision, keep itself informed as to the manner in which the same is conducted, and obtain from such carriers * * * all information necessary for the performance of its duties."

Section 216.58 provides:

"The commission shall report to the governor annually on or before December 1st and at other times, if required by him, their doings for the preceding year with such facts, statements, and explanations as will show the actual working of the system of railroad transportation of the state in its bearings on the business and prosperity of the people, and such suggestions relative thereto as it shall deem proper. It shall also biennially recommend to the governor any amendment of the railroad and warehouse laws which it shall deem desirable * * *."

In order to perform these functions efficiently in our increasingly complex economy, it is essential that the commission have access to many facts, often not voluntarily supplied. Section 216.12 directs that one of the commissioners shall regularly visit the stations of the carriers and personally inquire into their management.[7] Thus, visitation and personal inquiry provide one method of accomplishing the information-gathering task. The statutes also permit the commission to require reports from the carriers to that end. § 217.08. Both of these methods provide some of the necessary information, but neither has the flexibility and scope of the investigation device. In the absence of compelling evidence of a contrary legislative intent, we hesitate to adopt a construction which would so limit the commission's power to keep informed of the management and conduct of the carrier's business. Rather than providing the exclusive

[7]Section 216.12 provides in part:

"* * * one of their number shall visit the stations on the lines of each railroad as often as practicable, giving 20 days' notice in the local newspapers of the time and place of each visit, and personally inquire into the management of such railroad business, and at least once each year visit every county having a railroad station and inquire into the management of such railroad business."

means of satisfying the duty imposed by § 216.12, the direction therein for visitation and personal inquiry appears to state the minimum inspection necessary.

In view of the objectives of the act, apparent from the duties imposed upon the commission, we are convinced that the provision permitting the commission to conduct investigations on its own motion, expressed in the first sentence of § 216.21, was intended to give the commission an informal means of aiding the performance of functions not quasi-judicial in nature. Furthermore, utilization of this method seems appropriate in a case such as the one before us. The investigation here complained of concerned a proper subject of inquiry and sought only information conceded by intervener to be relevant and material. No attempt was made to do more than gather this information for the future guidance of the commission. No order was issued adjudicating the rights of any person, and none was contemplated. We find no basis for characterizing this investigation as an exercise of the commission's quasi-judicial function. Therefore, it follows that in conducting the investigation there was no need to observe the same procedural requirements that would be necessary in a quasi-judicial proceeding.[8]

However, should the commission at some later date desire to issue an order under the provisions of § 216.21 adjudicating the rights of the participants to this investigation, it will, of course, be required to hold a formal quasi-judicial proceeding complete with notice, hearing, findings and order, right to appeal, and all other requisites of such a proceeding.[9]

[8]Opp Cotton Mills, Inc. v. Administrator, 312 U. S. 126, 61 S. Ct. 524, 85 L. ed. 624; see, Bowles v. Bay of New York C. & S. Corp. (2 Cir.) 152 F. (2d) 330, 331 (concurring opinion). For a discussion of the differences between investigations and quasi-judicial hearings, see Bowles v. Baer (7 Cir.) 142 F. (2d) 787; In re Securities & Exch. Comm. (D. C.) 14 F. Supp. 417, affirmed (2 Cir.) 84 F. (2d) 316, reversed for mootness, Bracken v. Securities & Exch. Comm. 299 U. S. 504, 57 S. Ct. 18, 81 L. ed. 374; Annotation, 18 A. L. R. (2d) 552, 586.

[9]Morgan v. United States, 304 U. S. 1, 58 S. Ct. 773, 82 L. ed. 1129.

■ Intervener asserts that the investigation is invalid because it affirmatively appears that the commission's objective in obtaining the desired information was the improper one of gaining control over the management and operation of the transit company by substituting its judgment for that of the stockholders. Even assuming that this type of ulterior motive would invalidate an otherwise proper investigation,[10] the basis for intervener's contention is not such as to persuade us to assign such an objective to the commission. Intervener draws this motive entirely from part of a statement made by counsel for the commission in the course of his argument in the trial court. However, express denial of such an intent was made by the chairman of the commission appearing as a witness below. The stated purpose of the investigation, as it appears in the resolution authorizing its initiation, is to use the information obtained either in proceedings then pending before the commission or in subsequent proceedings.[11] In a memorandum attached to its order granting the commission's petition and dismissing intervener's complaint in intervention, the district court stated that "the Commission's investigation is proper and has been initiated and is being conducted in the public interest." Implicit in this statement is its determination that the purpose and objective of the investigation

---

[10] See, 42 Am. Jur., Public Administrative Law, § 26, p. 319, note 14, and cases there cited.

[11] The commission's petition filed in the district court and duly verified by its chairman states in part as follows:

"Said books, records and documents called for by said subpoena, are relevant, material, and necessary in and to said investigation and the Commission has in good faith so determined.

"It is absolutely necessary for the Commission, for the purposes of its said investigation, in order to supervise and control the management, and to prevent mismanagement of the business and affairs of said corporations, and to prevent the dissipation of their assets, to examine said books, records and documents. Such mismanagement and dissipation of the assets would necessarily adversely affect the facilities afforded to, and the rates and fares charged, the traveling public of the State of Minnesota, by said subsidiary organizations, for transportation upon the streetcars, buses and other vehicles and vessels operated by them."

was lawful and proper. We find nothing in the record that convinces us that a contrary conclusion should have been reached.

◼ Intervener also maintains that, irrespective of its right to conduct an informal investigation, the commission may not issue compulsory process against persons not subject to its regulation, except in connection with quasi-judicial proceedings. Section 216.18, relating to the commission's use of subpoenas, reads as follows:

"The commission in *any hearing or investigation* may require the attendance of witnesses and the production of any books, papers, and records. Witnesses shall receive the same fees and mileage as in civil actions. Disobedience of any subpoena in such proceeding or contumacy of a witness may, upon application of the commission, be punished by any district court in the same manner as if the proceedings were pending in such court." (Italics supplied.)

It is urged that "hearing" and "investigation" as used above are synonymous terms, both referring to a quasi-judicial proceeding. In our consideration of § 216.21, we have noted that an "investigation" may be utilized in furtherance of nonjudicial functions of the commission. We cannot adopt a construction which would give the same word an entirely opposite meaning when used in an almost adjacent section, especially since there is no compelling reason to do so. The location of § 216.18 near other sections dealing exclusively with quasi-judicial proceedings is not sufficient reason. The subpoena power is, of course, available in such proceedings, and it is only reasonable that § 216.18 be placed near the sections dealing with them. However, that does not prevent the section from serving a dual purpose. Express reiteration of the grant of subpoena power in each case where it is available would be mere redundancy.

◼ Intervener suggests that the use of the subpoena power against persons not subject to the commission's regulation would be unconstitutional unless restricted to quasi-judicial proceedings. The exact basis for this suggestion is not made clear; however, we assume that it is on the grounds that such a use would violate due process of law. At one time, it was seriously doubted that the subpoena

power could ever validly be used in administrative proceedings not quasi-judicial in character.[12] The case of Harriman v. Interstate Commerce Comm. 211 U. S. 407, 29 S. Ct. 115, 53 L. ed. 253, cited by intervener, reflected that attitude in its holding that under the then existing terms of the interstate commerce act the interstate commerce commission had no power to employ compulsory process in an investigation whose subject could not have been made the object of a complaint. Indeed, a dictum in the case (211 U. S. 418, 29 S. Ct. 117, 53 L. ed. 262-263) went so far as to question the constitutionality of the grant of such a power. Since that time, in both state and federal government, the subpoena power has been granted and exercised for a wide variety of functions not quasi-judicial in nature.[13] In the light of recent United States Supreme Court decisions,[14] today there is little doubt as to the constitutionality of such practice, particularly where, as here, a business "affected with a public interest" is the subject of the investigation. Nor do we think that a remnant of the former concept can be salvaged by contending that the witnesses in such investigations must be under the direct regulation of the agency conducting the investigation. So long as the investigation is for a lawfully authorized purpose and the information sought relevant and material to the investigation, we cannot see where due process is offended by requiring any person possessed of that information to testify.[15] A

[12]See, Langeluttig, *Constitutional Limitations on Administrative Power of Investigation* (1933) 28 Ill. L. Rev. 508, 523.

[13]See, Handler, footnote 6, *supra.*

[14]United States v. Morton Salt Co. 338 U. S. 632, 642, 70 S. Ct. 357, 364, 94 L. ed. 401, 410; Oklahoma Press Pub. Co. v. Walling, 327 U. S. 186, 208, 66 S. Ct. 494, 505, 90 L. ed. 614, 629. See, also, Electric B. & S. Co. v. Securities & Exch. Comm. 303 U. S. 419, 437, 58 S. Ct. 678, 684, 82 L. ed. 936, 945; Smith v. Interstate Commerce Comm. 245 U. S. 33, 43, 46, 38 S. Ct. 30, 32, 33, 62 L. ed. 135, 140, 141; see, Davis, *The Administrative Power of Investigation,* 56 Yale L. J. 1111, 1120-1126.

[15]For cases where the courts have upheld subpoenas issued by administrative agencies against persons or corporations not directly under their jurisdiction during a nonquasi-judicial investigation, see Stahlman v. Federal Communications Comm. 75 App. D. C. 176, 126 F. (2d) 124; United States v.

great public purpose may be served by such disclosures. No rights of the parties are adjudicated, and the rights of all witnesses are equally safeguarded should the disclosure sought be unreasonable or privileged or the proceeding or the subpoena be defective in any respect.

In view of our conclusions with respect to the merits of this appeal, it is unnecessary to consider whether intervener was entitled to intervene in the district court proceedings.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER, having been designated to represent the court at the American Law Institute meeting in Washington, D. C., was absent and took no part in the consideration or decision of this case.

---

Cream Products Dist. Co. Inc. (7 Cir.) 156 F. (2d) 732; Bowles v. Shawano Nat. Bank (7 Cir.) 151 F. (2d) 749; McGarry v. Securities & Exch. Comm. (10 Cir.) 147 F. (2d) 389.