[Civ. No. 9349.   Third Dist.   Jan. 21, 1958.]

REDDING PINE MILLS, INC. (a Corporation) et al., Appellants, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Carr & Kennedy and Laurence W. Carr for Appellants.

Edmund G. Brown, Attorney General, James E. Sabine and and Irving H. Perlus, Assistant Attorneys General, and Edward P. Hollingshead, Deputy Attorney General, for Respondents.

WARNE, J. pro tem.*—This is an appeal from a judgment denying a petition for a writ of mandate sought to compel the State Board of Equalization to quash a subpoena duces tecum issued by its secretary. Declaratory relief was also denied in the same proceeding.

The appellant Redding Pine Mills, Inc., is an Oregon corporation qualified to do business in California, and the appellant Robert B. Toogood is its secretary. On or about March 20, 1957, appellant Toogood, as secretary of Redding Pine Mills, Inc., was served with a subpoena duces tecum, which directed him to appear before one of the board's appraisers at the time and place designated therein and to produce the corporation's ledger and other books of account "recording historical cost data for buildings and structures, machinery and equipment of the lumber mill of said corporation . . . for all years from the date of installation or acquisition of said mill by said corporation to and including 1956," and "the inventory records for 1956 . . . and the record of said corporation of its most recent physical inventory taken prior to March 5, 1956," defining "inventory," as used therein, to mean "merchandise, materials, work in process, finished products, and supplies for the lumber mill. . . "

The trial court found, among other things, that Redding Pine Mills, Inc., is a so-called "common property" taxpayer whose properties in Shasta County are subject to assessment by the assessor of that county and not by the State Board of Equalization.

The trial court also found that the State Board of Equalization was, at the time of the issuance of the subpoena, making a survey in 16 counties of the state, including Shasta County, and a statistical survey in each of the remaining

---

*Assigned by Chairman of Judicial Council.

counties of the state to determine the relationship between the total value of land, improvements and personal property entered upon the local assessment roll by the county assessor and the total market value thereof to enable it to perform the duties required of it by section 9 of article XIII of the California Constitution.

Appellants contend that, since the corporation owns no property subject to assessment by the State Board of Equalization, it is not subject to regulation by the board and, therefore, the board exceeded the constitutional and statutory limits that are imposed upon the use of a subpoena in the absence of an issue followed by a hearing and an opportunity afforded them to have rulings that are subject to review on the materiality and admissibility of the demanded documents. On the other hand, respondents claim the right to inspect the subpoenaed documents in order to enable the board to perform the duties required of it by section 9 of article XIII of the California Constitution. That section of the California Constitution established the State Board of Equalization, and in part provides:

"A State Board of Equalization . . . shall be elected . . . whose duty it shall be to equalize the valuation of the taxable property in the several counties of the State for the purposes of taxation. . . . The boards of supervisors of the several counties of the State shall constitute boards of equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation; provided, such State and county boards of equalization are hereby authorized and empowered, under such rules of notice as the county boards may prescribe, as to the county assessments, and under such rules of notice as the state board may prescribe as to the action of the State board, to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll; . . ."

To enable the board to perform the duties required of it by the above constitutional provision, the Legislature enacted section 1831 of the Revenue and Taxation Code which provides that:

". . . the board shall make a survey annually in each county to determine the relationship between the total value of land, improvements and tangible personal property entered

upon the roll by the assessor, and the total market value thereof. As a basis for this determination, the board shall consider sales and other appraisal data compiled by appraisers competent to determine accurately the market value of the property. These data shall relate to representative samples of property subject to local assessment in each county sufficient in number and dispersion to assure an adequate cross-section of the taxable wealth within the county, both as to the classes of property enumerated and as to the location thereof.''

It is obvious that, in order to perform these duties, it is essential that the board have access to many facts, often not voluntarily supplied by the taxpayer and we are convinced that the use of a subpoena, when the facts are not voluntarily supplied, violates no constitutional provision of due process of law. Nothing in section 1831 of the Revenue and Taxation Code requires that a hearing be held at any particular stage of the investigation, nor can any order be made concerning the person whose property is being investigated. Such investigations concern a proper subject of inquiry since it seeks only information necessary and material to aid the board in carrying out the constitutional mandate. In so doing, the board does not exercise a quasi-judicial function. There is no need to observe the same procedural requirements in making investigation contemplated by the statute as are necessary in quasi-judicial proceedings. In 27 A.L.R.2d 1208, 1209, annotation, it is said:

''. . . It is now well settled that, without violating constitutional provisions bearing upon separation and delegations of powers or due process, an administrative agency may be given and may exercise the power to require the attendance of witnesses in proceedings of a purely investigatory nature.'' (See cases cited.)

It has been so held even where the person subpoenaed was not subject to regulation. *State* ex rel. *Railroad & Warehouse Com.* v. *Mees*, 235 Minn. 42 [49 N.W.2d 386, 27 A.L.R.2d 1197, 1206-1207].) In the Mees case the court said:

''Intervener suggests that the use of the subpoena power against persons not subject to the commission's regulation would be unconstitutional unless restricted to quasi-judicial proceedings. The exact basis for this suggestion is not made clear; however, we assume that it is on the grounds that such a use would violate due process of law. At one time, it was seriously doubted that the subpoena power could ever validly

be used in administrative proceedings not quasi-judicial in character.

"The case of *Harriman* v. *Interstate Commerce Com.*, 211 U.S. 407 [29 S.Ct. 115, 53 L.Ed. 253], cited by intervener, reflected that attitude in its holding that under the then existing terms of the interstate commerce act the interstate commerce commission had no power to employ compulsory process in an investigation whose subject could not have been made the object of a complaint. Indeed, a dictum in the case, 211 U.S. 418 [29 S.Ct. 117, 53 L.Ed. 262-263], went so far as to question the constitutionality of the grant of such a power. Since that time, in both state and federal government, the subpoena power has been granted and exercised for a wide variety of functions not quasi-judicial in nature. In the light of recent United States Supreme Court decisions, today there is little doubt as to the constitutionality of such practice, particularly where, as here, a business 'affected with a public interest' is the subject of the investigation. Nor do we think that a remnant of the former concept can be salvaged by contending that the witnesses in such investigations must be under the direct regulation of the agency conducting the investigation. So long as the investigation is for a lawfully authorized purpose and the information sought relevant and material to the investigation, we cannot see where due process is offended by requiring any person possessed of that information to testify. . . . No rights of the parties are adjudicated. . . ."

Nor do we agree with appellants' contention that the board's statutory authorization to issue subpoenas as an implementation to its investigatory powers is restricted to a compelling of the production and examination of records of persons whose property is subject to assessment by it or who was required to report to it under the provisions of sections 15617 and 15618 of the Government Code. While the board derives its authority to issue subpoenas under these sections in an investigation of property, subject to assessment by it for taxation, it does not follow that the board does not have the power to issue subpoenas in an investigation relating to intercounty equalization. Section 9 of article XIII of the California Constitution, section 1831 of the Revenue and Taxation Code, and section 15611 of the Government Code are the substantive authority for such investigations. Under the provisions of section 15611 of the Government Code:

"Whenever the board deems it necessary, it may visit as

a board or by its individual members, or may send its secretary or duly appointed representative to, the several counties and cities to inspect property, learn its value, and collect information to enable it to equalize assessments and levy the taxes as required by law.''

Section 15613 of the Government Code provides that:

''The board may issue subpenas for the attendance of witnesses or the production of books, records, accounts, and papers before it, its secretary, any of its members, or any representative designated by it. Such subpenas shall be signed by a member of the board or its secretary, and may be served by any person.''

It is our conclusion that under these sections the board was vested with the power to issue the subpoena duces tecum in question.

█ Nor is there any conflict between sections 15617 and 15618 of the Government Code and section 15613. Each of the sections is a part of the substantive provisions authorizing the use of a subpoena provided for in section 15613.

No further points require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied February 10, 1958, and appellants' petition for a hearing by the Supreme Court was denied March 19, 1958. Carter, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.