In re IOWA STATE COMMERCE COMMISSION.

No. 50360.

(Reported in 110 N.W.2d 390)

1238

August 15, 1961.

Holliday, Miller & Stewart and Joseph B. Joyce, all of Des Moines, for Norman Mendon, respondent-appellant.

Waldo F. Wheeler, Commerce Counsel, George M. Mariner, Assistant Commerce Counsel, and Robert R. Rydell, Special Assistant Commerce Counsel, of Des Moines, for applicant-appellee.

LARSON, J.—Pursuant to an investigation of the status of Arrow Express Forwarding Company (hereinafter referred to as the Arrow Express), the Iowa State Commerce Commission (hereinafter referred to as the Commission) under the provisions of section 474.20, Code of 1958, applied to the district court for an order requiring Norman Mendon, respondent herein, to obey the terms of a subpoena duces tecum issued by the Commission in the course of its investigation. The trial court found that the Commission had acted within its jurisdiction, that the subpoena was proper, that the evidence did not justify respondent's refusal to produce the records required by the subpoena duces tecum, and ordered Mendon to produce the records required. We agree with that determination and order.

The principal issues presented to us in this appeal are whether the Commission has jurisdiction to investigate the operations of the Arrow Express and to require Norman Mendon, president of that company, to turn over to it certain books and records set forth in a subpoena served upon him, and whether the Commission produced sufficient relevant and competent evidence to prove that respondent unlawfully refused to submit the records required.

The trial court specifically found it was the duty of the Commission in this matter to determine the status of the Arrow Express, that the Commission had the power and authority to issue the subpoena, that Mendon was obliged to obey it and submit the records requested to the Commission, its agents and employees, at the time and place stated and as might be needed in the investigation, and that he refused without just cause.

The relevant facts as disclosed by the record are quite simple. On November 15, 1960, the Commission applied to the

1240

District Court in and for Polk County, Iowa, for an order of court requiring Mendon to obey the terms of a subpoena duces tecum issued by the Commission pursuant to an investigation by it to determine whether the Arrow Express is operating as a motor carrier under the laws of the State of Iowa. The application stated that while Mendon appeared at the time and place fixed in the subpoena, he refused to produce and submit for Commission inspection the records required. The resistance admitted the Commission had instituted an informal investigation of the matter, denied the subpoena was issued under the authority of section 474.18, Code of Iowa, 1958, admitted his refusal to submit the records and materials required, and alleged the Arrow Express was a forwarding company over which the Commission had no jurisdiction. It also alleged no formal hearing was held, no Commission member was present at the time of the refusal, and no formal order for relinquishment of the records for examination was made.

Applicant's evidence consisted of the testimony of Claude E. Davis, executive secretary of the Iowa State Commerce Commission, and two exhibits, Exhibit "1" and Exhibit "A". The respondent offered no evidence. Exhibit "A" purports to be a record of the proceedings on November 10, 1960, before the Commission pursuant to the subpoena, and Exhibit "1", in addition to a copy of those proceedings, purports to set out a copy of the subpoena, its return of service, two letters to an inspector for the Commission from the superintendent of the motor transportation division regarding an investigation of operations of the Arrow Express, Docket No. HA-2287, an apparent report from an inspector, and a communication from the commerce counsel to the Commission as to what facts must be established before the Arrow Express would be considered a common carrier under the Iowa law.

Mr. Davis, the executive secretary of the Commission, testified that at the Commission's request he issued the subpoena to the respondent, Mendon, that he was present at the time fixed for the meeting, that Chairman of the Commission, Martin, was present, as were counsel for the Commission, that Commissioner Martin was present when respondent's motion to quash was

overruled and, as he recalls, when Mendon refused to turn over the records required, that Exhibit "A" is an official record of the proceeding and that it is a true and correct statement of the proceedings that took place, that Mendon had some records with him but was not put under oath and, as Davis recalls, was informed no testimony would be required of him at that time, that after counsel spoke for him the meeting adjourned, that when a record of the proceedings was requested, a Commission secretary acted as a reporter, that he recalled no demand for an official court reporter, and that as he understood the meeting it was a hearing in response to a subpoena, an informal hearing in an investigation which "almost resolved itself in a formal hearing."

Davis also identified Exhibit "1" as the Commission's Docket HA-2287 file, opened August 16, 1960, in In the Matter of the Investigation of Operations: Arrow Express Forwarding Company.

I. Two of respondent's five assignments of error relate to the court's findings of fact and the admission of Exhibit "A". There is no merit in either contention. Exhibit "1", which included a copy of Exhibit "A", was introduced in evidence without objection. Furthermore, we think none of the nine objections to the admission of Exhibit "A" was good or sufficient, being mostly allegations or denials of statements of fact made in the proceedings report.

▇▇▇ There is no evidence whatsoever that would have sustained a trial court finding that Mendon did not refuse to turn over for inspection by the Commission the records required. He admitted it in his pleadings, and there was ample undisputed evidence that through counsel he advised the Commission that he "respectfully refuses to turn over said records for the examination of the Commission."

▇▇▇ It is true the evidence shows Mendon was not sworn and was not called upon to testify at the Commission hearing, but it also shows through counsel he immediately moved to quash the subpoena for enumerated reasons, and when that was overruled he challenged the jurisdiction of the Commission over him or the records brought by him. Obviously, then, it would

have been an idle gesture to have attempted to swear respondent and ask him to identify the records he had with him. We think such a gesture was unnecessary. However, we do wish to point out that these investigations, even though they are informal and preliminary to any formal quasi-judicial hearings, should be commenced by a formal resolution of the Commission, and at the hearing the person subpoenaed should be sworn and then called upon to identify for the record the papers produced. Respondent anticipated this procedure for he requested and received a copy of the proceedings as recorded by the reporter.

In the instant case, due to respondent's refusal in any event to submit the papers because the Commission lacked jurisdiction in the matter, we hold no prejudicial error occurred when the Commission failed to swear the witness Mendon or make a formal order that he deliver the records sought.

II. We come now to the nub of this controversy. Basically, respondent contends in his remaining three assignments that the court erred in holding that the Commission had the power and duty to determine whether the acts of the Arrow Express in the field of public transportation was that of a carrier under its jurisdiction, and that it was given the authority to conduct an investigation of the company's business without first charging Arrow Express with a violation of law. He contends before the court could order the records produced under section 474.18, Code of Iowa, 1958, the Commission had to show the Arrow Express was a carrier and that respondent refused to obey the Commission's subpoena when ordered to do so at a formal hearing held by the Commission itself. We do not agree.

Section 474.18, we think, is much broader than the narrow field respondent would have it cover. While the question raised here as to the power and authority of an administrative agency under such a statute is before us for the first time, it has generally been held in other jurisdictions that the provisions of statutes similar to ours do give the board or commission the power to conduct preliminary investigations in the field of public interest assigned to it, that its reasonable demands for information as to status, method of operation, etc. under a

subpoena will be upheld and supported by a court order, and as the hearing is not one of a quasi-judicial character, the formalities of such a hearing are not required. Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384; United States v. Morton Salt Co., 338 U. S. 632, 70 S. Ct. 357, 94 L. Ed. 401; Endicott Johnson Corp. v. Perkins, 317 U. S. 501, 63 S. Ct. 339, 87 L. Ed. 424; State ex rel. Railroad & Warehouse Comm. v. Mees, 235 Minn. 42, 49 N.W.2d 386, 27 A. L. R.2d 1197; 42 Am. Jur., Public Administrative Law, section 171, page 533, and citations. We concur in those conclusions.

■ III. The powers and duties of the Iowa State Commerce Commission appear in chapter 474 of the 1958 Code. They include the power of "Investigation and inquiry". Section 474.18. When the Commission has reason to believe the state laws as to carriers are being violated and a reasonable investigation is initiated, the investigation, we think, is being conducted in the public interest, and such an investigation is proper to determine the operational facts. As bearing on this question see our decision in Circle Express Co. v. Iowa State Commerce Comm., 249 Iowa 651, 86 N.W.2d 888, and citations. Also see State ex rel. Railroad etc. v. Mees, supra, and many citations.

Section 474.18, Code of Iowa, 1958, provides: "The commission shall investigate and inquire into the management of the business of all common carriers subject to the jurisdiction of said commission and keep itself well informed as to the manner and method in which the same is conducted. It shall have the right to obtain from them full and complete information necessary to enable the commission to perform its duties. It shall have power to require the attendance and testimony of witnesses, the production of all books, papers, tariff schedules, contracts, agreements, and documents, relating to any matter under investigation, and to inspect the same and to examine under oath or otherwise any officer, director, agent, or employee of any common carrier; to issue subpoenas and to enforce obedience thereto."

One of its duties, we have said, is to determine whether there are facts and circumstances which would justify a holding that as a matter of fact the business involved is that of a com-

mon carrier under the law. Circle Express Co. v. Iowa State Commerce Comm., supra.

Section 474.20 provides that the Commission can invoke the aid of courts of record to enforce obedience to its lawful demand. On November 8, 1960, it issued and had duly served upon the respondent, Mendon, a subpoena duces tecum in the following language: "You are hereby commanded to appear before the Iowa State Commerce Commission at its offices * * * in Des Moines, Iowa, at 10:00 o'clock A.M. on the 10th day of November, 1960, to give evidence in an investigation of the operations of Arrow Express Forwarding Company and have with you all prepaid and collect waybills, freight receipts, shipping tickets, bills of lading and all other documents describing shipments of freight handled by Arrow Express Forwarding Company *during the month of October, 1960,* and this you shall no wise omit, under the penalty of the law." (Emphasis supplied.)

Respondent's contention, that only in quasi-judicial hearings, in which a party engaged in the transportation business is charged with a violation of the carrier laws can such power of subpoena be exercised to obtain records pertaining to that operation, cannot be sustained. The power granted by these sections was intended to extend also into the field of preliminary inquiry by the Commission. It clearly was not the legislative intent that the Commission first *prove the fact to be determined,* i.e. whether the party was acting as a common carrier. Such a limited interpretation of the provisions of section 474.18 would greatly reduce its usefulness to the Commission in the performance of its duties.

We are satisfied, when the Commission here became suspicious of and authorized an investigation as to the operations of the Arrow Express in Iowa, that it had the power and authority to issue the subpoena duces tecum and to require respondent to produce for its inspection records and papers covering a reasonable period as was prescribed in the subpoena issued herein.

We must also hold that an informal hearing in which the respondent is required to produce and identify the records

or papers requested is quite sufficient. No charge need be pending against either the respondent or the person or firm investigated at that time. No strict rules as to the admissibility of evidence necessary in adversary proceedings apply. If after an examination of the records required it is determined by the Commission that the Arrow Express is indeed operating as a forwarding company only and that the evidence available would not tend to prove it was operating as a common carrier contrary to the laws of this state, no adversary action will result. On the other hand, if the evidence obtained by this investigation tends to prove it is operating as a carrier and an action is commenced by the Commission, that quasi-judicial determination by the Commission is of course reviewable by the courts as provided in chapter 474, Code, 1958, and strict rules of evidence apply. Circle Express Co. v. Iowa State Commerce Comm., supra, 249 Iowa 651, 86 N.W.2d 888, and citations. Obviously, the Commission must, if possible, obtain the material and relevant facts before commencing an adversary action against a party engaged in the transportation industry. Since all parties concerned will agree to that objective, it would seem reasonable that the legislature did not intend the conferred power of investigation to be so limited that it would not aid in reducing questionable adversary actions.

Other jurisdictions have consistently followed the Federal courts in giving such statutes a broad interpretation.

As stated by the United States Supreme Court in United States v. Morton Salt Co. (February 1950), supra, 338 U. S. 632, 642, 643, 70 S. Ct. 357, 364, 94 L. Ed. 401, 411: "When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." In that case the power vested in the Federal Trade Commission was challenged. The statute there too gave power " 'to investigate * * * any corporation engaged in commerce' " and the court held, if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant, the power of investigation granted such an agency is sufficient. The court went on to say: "The only

power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It * * * can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."

Perhaps the best discussion of this matter is found in the recent case of State ex rel. Railroad etc. v. Mees, supra, 235 Minn. 42, 52, 49 N.W.2d 386, 392. There the Minnesota Supreme Court held that a statute requiring the Railroad and Warehouse Commission to investigate, on its own motion, matters relating to any carrier's management of its business, when the public interest so requires, and that the authority is not only to conduct quasi-judicial investigations, but information-seeking investigations as well, and that the commission has the power to issue compulsory process against persons not subject to its regulation in aid of such investigation.

The court there reviewed the growth of administrative power to investigate and pointed out: "At one time, it was seriously doubted that the subpoena power could ever validly be used in administrative proceedings not quasi-judicial in character." Langeluttig, Constitutional Limitations on Administrative Power of Investigation (1933), 28 Illinois Law Review 508, 523; Harriman v. Interstate Commerce Comm., 211 U. S. 407, 29 S. Ct. 115, 53 L. Ed. 253.

Since that time the subpoena power in both State and Federal Governments has been granted and exercised for a wide variety of functions, not judicial in nature. See Handler, The Constitutionality of Investigations by the Federal Trade Commission: II, 28 Columbia Law Review 905, 925–929.

The Minnesota court (pages 53, 54 of 235 Minn.) then went on to say: "In the light of recent United States Supreme Court decisions, today there is little doubt as to the constitu-

tionality of such practice, particularly where, as here, a business 'affected with a public interest' is the subject of the investigation. Nor do we think * * * that the witnesses in such investigations must be under the direct regulation of the agency conducting the investigation. [Citing United States v. Morton Salt Co., 338 U. S. 632, 642, 70 S. Ct. 357, 364, 94 L. Ed. 401, 410; Oklahoma Press Pub. Co. v. Walling, 327 U. S. 186, 208, 66 S. Ct. 494, 505, 90 L. Ed. 614, 629; Smith v. Interstate Commerce Comm., 245 U. S. 33, 43, 46, 38 S. Ct. 30, 32, 33, 62 L. Ed. 135, 140, 141; Davis, The Administrative Power of Investigation, 56 Yale L. J. 1111, 1120–1126] So long as the investigation is for a lawfully authorized purpose and the information sought relevant and material to the investigation, we cannot see where due process is offended by requiring any person possessed of that information to testify. A great public purpose may be served by such disclosures. No rights of the parties are adjudicated, and the rights of all witnesses are equally safeguarded should the disclosure sought be unreasonable or privileged or the proceeding or the subpoena be defective in any respect."

We should refer to one more case which relates to the defense when one considers the information sought to be irrelevant and immaterial to the lawful investigation. In Endicott Johnson Corp. v. Perkins, supra, 317 U. S. 501, 508, 509, 63 S. Ct. 339, 343, 87 L. Ed. 424, 429, the Supreme Court points out the investigation is proper where the Secretary of Labor "had reason to believe" the employees in question were covered under the Act and "The evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act * * *." It further stated under such circumstances "it was the duty of the District Court to order its production for the Secretary's consideration."

It is also the generally accepted rule now that the administrative agency need not first prove it "had reason to believe" or probable cause before it could obtain court assistance in the enforcement of its investigation subpoena. Relevancy and competency can still be challenged in a quasi-

judicial hearing if one is found necessary. For a good discussion of that point, see Davis, Administrative Law Treatise, First Ed., Volume 1, pages 216–224.

 IV. We find no merit in respondent's contention that the proceedings were irregular, that proper officials were not present, and that no formal order was entered requiring him to submit the records required. The only order required was that contained in the subpoena. Section 622.65, Code, 1958, provides the subpoena may require the witness to bring books, papers, etc. in his control, "which he is bound by law to produce as evidence." The latter phrase clearly refers to a class of records, not to their materiality. Although respondent brought the records, he refused to produce them and thus became subject to a court order that he do so. There is no substantial evidence of a lack of good faith or probable cause in the Commission's action of issuing the subpoena.

 The trial court in the case at bar found, as it must under the record, that the Commission believed the Arrow Express was engaging in common-carrier operations, properly initiated an investigation, and under section 474.18 issued a subpoena duces tecum to respondent, who appeared and improperly refused to permit Commission inspection of the records required by the subpoena. It then became the duty of the court to order Mendon to forthwith produce before the Commission for its inspection the records listed in the subpoena duces tecum, and this it did. There being no error, the order and judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.