**IOWA CITY HUMAN RIGHTS COMMISSION, Appellee,**

v.

**ROADWAY EXPRESS, INC., Appellant.**

No. 85–1775.

Supreme Court of Iowa.

Dec. 17, 1986.

Robert E. Konchar and Kevin J. Visser of Moyer & Bergman, Cedar Rapids, for appellant.

David E. Brown, Asst. City Atty., and Jary J. Hulst, City Atty. Intern, Iowa City, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

In this narrowly-focused appeal, we are asked to consider the jurisdictional limitations of a municipal civil rights commission's exercise of its subpoena power. The defendant, Roadway Express, Inc. (Roadway) has appealed from an order granting enforcement of a subpoena duces tecum issued by the plaintiff, Iowa City Human Rights Commission (commission) in connection with a complaint of employment discrimination lodged against Roadway. The trial court concluded that the subpoenaed documents were "proper matters for investigation." We agree with the trial court and affirm.

At the outset, we note that this case comes before us at a very preliminary stage of the proceedings. The commission was in the process of investigating a complaint of employment discrimination filed by Jan Villhauer, an Iowa City resident who had been employed by Roadway as a "casual/clerical" employee at its Iowa City terminal from June 1982 until her unexpected termination on July 27, 1983. Villhauer's complaint alleged, in pertinent part:

> A male was hired to replace me, who performs the same duties but with more pay and a different job title. I believe that the Roadway Express Co. generally hires women as casual/clerical workers, while hiring men to do the same work for more pay under a different classification. I further believe that I have been discriminated against because I am a woman.

During the course of its investigation, the commission and Roadway engaged in lengthy discussions concerning the specifics of Villhauer's employment situation. Roadway, however, steadfastly refused to comply with the commission's request for information concerning hiring and promotion practices at other Roadway terminals in Iowa, claiming that such information would be totally irrelevant to the resolution of Villhauer's complaint in Iowa City. The commission, concluding that Villhauer's complaint could not be adequately investigated without considering the impact of the company's statewide practice on its two Iowa City employees, persisted in its request for the information, ultimately issuing a subpoena duces tecum which required production, among other things, of the following documents:

. . . .

(2) A listing of all employees in said company's Iowa offices since November 1, 1982, who are or have been classified as "casual/clerical," their salaries and dates of employment. Note which of said employees have been promoted to "regular" status.

(3) A listing of all employees in said company's Iowa offices since November 1, 1982, who are, or have been, classified as "regular" their job titles, salaries, dates of employment and benefits status.

Still obtaining no cooperation with its request, the commission filed a petition for judicial enforcement of the subpoena. Roadway responded with a motion for protective order, claiming that the scope of the request was unduly burdensome and irrelevant. After a nonevidentiary hearing at which Roadway argued only the issue of relevance, the trial court overruled the motion for protective order. Roadway's appeal followed.

■ We have not previously had the opportunity to squarely address the standards to be applied in the judicial enforcement of an administrative subpoena. However, our prior decisions have construed broadly the right of an agency to conduct preliminary investigations and issue administrative subpoenas in the field of public interest assigned to it. *In re Iowa State Commerce Commission,* 252 Iowa 1237, 1242, 110 N.W.2d 390, 394 (1961); *Wilson & Co. v. Oxberger,* 252 N.W.2d 687, 688 (Iowa 1977). Other state and federal courts which have considered judicial enforceability of such subpoenas have consistently applied a four-part test which requires that the subpoena be (1) within the statutory authority of the agency, (2) reasonably specific, (3) not unduly burdensome and (4) reasonably relevant to the matters under investigation. *EEOC v. Ocean City Police Department,* 787 F.2d 955, 957 (4th Cir.1986); *United States v. Westinghouse Electric Corporation,* 788 F.2d 164, 166 (3rd Cir.1986); *Woerth v. United States,* 231 F.2d 822, 824–825 (8th Cir.1956); *Cessna Aircraft v. Kansas Commission on Civil Rights,* 229 Kan. 15, 27–28, 622 P.2d 124, 134–135 (1981); *Matter of Agerter,* 353 N.W.2d 908, 911 (Minn.1984). We adopt this well-established standard and apply it in this case.

Because Roadway challenges neither the specificity nor the burdensomeness of the subpoena on appeal, we will address only those factors pertaining to statutory authority and relevance.

## I. *Statutory authority.*

■ Sections 18–2 and 18–37(1)(a) of the Iowa City Code (1983) authorize the commission to protect citizens aggrieved by a discriminatory practice occurring *within the city limits* and to execute *within the city* the policies of the Civil Rights Act of 1964. The commission's investigative powers, however, extend to anything *relevant* to the alleged discriminatory practice "if it finds the following to be true":

(1) The subpoena is necessary to carry out a public hearing of the commission; or

(2) The respondent fails to provide information relevant to the investigation and the investigator is unable to proceed without specific materials.

Iowa City, Iowa, Code § 18–38(b).

Roadway urges us to interpret this ordinance so as to confine the commission's investigatory powers within the physical boundaries of Iowa City, just as its powers of enforcement have been statutorily confined. We reject such a narrow interpretation of the commission's mandate. The plain language of the ordinance clearly establishes a test of relevancy, not boundary lines, as the appropriate limit of the commission's investigatory power.

Furthermore, this broad grant of investigatory power given by Iowa City to its Civil Rights Commission is in accordance with the home rule power and authority granted municipalities by the Iowa Constitution to determine their local affairs and government. Iowa Const. art. III, § 38A. As constitutionally required, such authority is "not inconsistent with the laws of the

general assembly," *id.*, for section 601A.19 of the Iowa Civil Rights Act of 1965 specifically grants the following broad mandate to local civil rights commissions:

> Nothing contained in any provision of this chapter shall be construed as indicating an intent on the part of the general assembly to occupy the field in which this chapter operates to the exclusion of local laws not inconsistent with this chapter that deal with the same subject matter.

> Nothing in this chapter shall be construed as indicating an intent to prohibit an agency of local government having as its purpose the investigation and resolution of violations of this chapter from developing procedures and remedies necessary to insure the protection of rights secured by the Iowa civil rights Act. An agency of local government and the Iowa civil rights commission shall co-operate in the sharing of data and research, and co-ordinating investigations and conciliations in order to eliminate needless duplication.

We interpret this legislation to contemplate the possibility of overlapping jurisdiction between state and local commissions, at least in the area of research and investigation. Roadway suggests that such an interpretation would subject it to "a series of uncoordinated attacks by numerous quasi-governmental agencies." In fact, our interpretation leads to just the opposite result. So long as a local investigation has as its focus the eradication of unlawful discrimination within its own locale, inquiry as to the source of that discrimination originating outside its borders promotes the spirit of cooperation and avoidance of needless duplication encouraged by the statute.

Thus we conclude that the commission had the statutory authority to issue the subpoena in question, so long as the information sought was relevant to the investigation.

## II. *Relevance.*

Jan Villhauer's complaint alleges not only that she was the victim of a discriminatory employment practice occurring in Iowa City, but that Roadway's hiring and promotion policies generally result in disparate treatment of its female employees. In order to commence what it thought to be a thorough investigation of her complaint, the commission sought two lists of Roadway's employees for the prior year, one covering "casual/clerical" employees and the other pertaining to "regular" employees. This request, argues Roadway, was "plainly overreaching." Roadway claims that none of the information sought in such a state-wide or company-wide examination could possibly yield evidence relevant to Villhauer's individual charge of discrimination in Iowa City.

While Roadway's prediction as to the weight and effect of the subpoenaed documents may ultimately prove to be correct, its relevancy objection at this stage of the proceedings ignores the probative nature of such evidence in the establishment of a prima facie case of sex discrimination.

The use of such evidence to support claims of disparate treatment in employment has been widely recognized. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668, 679 (1973) ("[S]tatistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks."); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, 216 (1981) (intent is difficult to prove and will often be shown only by circumstantial evidence such as statistics demonstrating a pattern of practice); *Davis v. Califano*, 613 F.2d 957, 965 (D.C.Cir.1979) ("In a promotion case ... the organization in which plaintiff is an employee is appropriately utilized as the relevant labor market.... [a]ppellant's statistical data ... indicating a substantial disparity between the percentage of female employees in the upper grade and salary position ... and the overall percentage of female employees in those organizational

units, is sufficient to make out a prima facie case of discrimination."); *Craik v. Minnesota State University Board,* 731 F.2d 465, 471 (8th Cir.1984) ("The statistical and other evidence is relevant to the individual claims because it 'is often a telltale sign of purposeful discrimination,'" quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 340, 97 S.Ct. 1843, 1856–57, 52 L.Ed.2d 396, 418 (1977)); *Watson v. Fort Worth Bank and Trust,* 798 F.2d 791, 798 (5th Cir.1986) (Such statistical evidence is probative of the employer's veracity in explaining its actions).

As the foregoing authorities overwhelmingly suggest, comparative employment data constitutes probative evidence from which discriminatory intent may be inferred. We therefore conclude that the commission's subpoena satisfies the relevancy standard for judicial enforcement. Having previously found the issuance of the subpoena to be within the commission's statutory authority, we find no error in the trial court's conclusion that the subpoenaed documents were "proper matters for investigation." The decision of the trial court is, therefore, affirmed.

AFFIRMED.