CITIZENS' AIDE/OMBUDSMAN,
Appellant,

v.

Paul GROSSHEIM and Crispus Nix, in
their capacity as employees of the Iowa
Department of Corrections, Appellees.

No. 92–212.

Supreme Court of Iowa.

April 21, 1993.

Ruth H. Cooperrider, Des Moines, for
appellant.

Bonnie J. Campbell, Atty. Gen., and R.
Andrew Humphrey, Asst. Atty. Gen., for
appellees.

Considered by McGIVERIN, C.J., and
SCHULTZ, CARTER, NEUMAN, and
SNELL, JJ.

NEUMAN, Justice.

To copy or not to copy? That is the question in this squabble between the Citizens' Aide/Ombudsman and the Iowa Department of Corrections over a videotaped recording of an incident under investigation at the Iowa State Penitentiary. A protective order issued by the district court permits the Citizens' Aide to view—but not obtain its own copy of—the videotape. We reverse.

All we know about the disputed tape is that it records an inmate incident which occurred June 30, 1991, in a "hospital sideroom" at the prison. After receiving several complaints about the incident, Citizens' Aide William Angrick initiated an investigation. *See* Iowa Code § 601G.9(1) (1991) (authorizing Citizens' Aide to investigate, subject to limited exceptions, "any administrative action of any agency"). As part of that investigation, Angrick requested and received copies of incident reports and disciplinary records prepared by prison officials. Those officials also conceded that Angrick or his aides could view the official videotape at department of corrections headquarters. But corrections officials have repeatedly refused Angrick's request for a copy of the tape and have failed to honor two subpoenas duces tecum issued for its production.

Angrick petitioned the district court for an order compelling obedience to the subpoenas. The department of corrections countered with combined motions for protective order, injunctive relief, and to quash the subpoenas. It claimed that production of the tape would be contrary to the public interest "because it is of limited value without the presence of the participants, depicted in the videotape, to explain their actions" and would thereby subject the department to risk of irreparable harm from "gross mischaracterization" of its contents. In response, Angrick noted that, under Iowa Code section 601G.9(3), protection from public disclosure is required for all confidential documents obtained by the Citizens' Aide. Moreover, he urged that access to a copy of the tape would greatly facilitate his investigation. Rather than

being judged in isolation, he argued, the tape would be used to supplement and better assess other information gathered in the investigation.

The district court quashed the motion to compel and issued a protective order which permitted the Citizens' Aide unlimited viewing of the videotape at corrections headquarters but prevented it from obtaining its own copy. The court's brief ruling cited the following four factors as the basis for its decision:

> (1) the tape in question had been made available to the Plaintiff,
>
> (2) the tape in question will continue to be made available for review by the Plaintiff,
>
> (3) the tape contains intelligence information concerning the internal layout and procedures at this maximum security facility,
>
> (4) the Plaintiff may use their own videotape machine for view[ing].

It is from this decision that the Citizens' Aide has appealed.

I. Iowa Code section 601G.9(4) authorizes the Citizens' Aide to "[i]ssue a subpoena to compel any person to ... produce documentary or other evidence relevant to a matter under inquiry." Matters pertaining to the department of corrections merit special attention by statute. The Citizens' Aide is required to appoint an assistant "who shall be primarily responsible for investigating complaints relating to penal or correctional agencies." Iowa Code § 601G.6.

Agencies are vested with broad authority to issue investigatory subpoenas within their assigned fields of expertise. *Iowa City Human Rights Comm'n v. Roadway Express, Inc.*, 397 N.W.2d 508, 510 (Iowa 1986); *Wilson & Co. v. Oxberger*, 252 N.W.2d 687, 688 (Iowa 1977). Judicial enforcement hinges on whether the subpoena is "(1) within the statutory authority of the agency, (2) reasonably specific, (3) not unduly burdensome, and (4) reasonably relevant to the matters under investigation." *Roadway Express*, 397 N.W.2d at 510.

Because agency subpoena power is essentially a discovery tool, our review is limited to abuses of trial court discretion. *Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 497 (Iowa 1981); *see also NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 113 (5th Cir.1982) (district court's enforcement order to be affirmed unless discretion abused). That does not mean, however, that the court's discretion is unlimited. Enforcement is the rule, not the exception, so long as the four-factor test we adopted in *Roadway* is met. *See G.H.R.*, 707 F.2d at 113 (court compelled to order obedience to subpoena court found relevant to matters under inquiry); *see also* Iowa Code § 601G.9(4). Abuse of discretion may be shown where there is no record to support the court's factual conclusions, or where the decision is grounded on reasons that are clearly untenable or unreasonable. *State v. National Dietary Research, Inc.*, 454 N.W.2d 820, 822 (Iowa 1990); *Glenn v. Farmland Foods, Inc.*, 344 N.W.2d 240, 243 (Iowa 1984); *Rath v. Sholty*, 199 N.W.2d 333, 336 (Iowa 1972).

II. There appears little dispute that the subpoena issued by the Citizens' Aide meets two of the *Roadway* factors. First, investigation of prison activity falls within the statutory authority of the agency and, second, the request is reasonably specific. *See Roadway*, 397 N.W.2d at 510. The dispute centers on whether the tape contains sensitive information about prison security, and whether giving the Citizens' Aide its own copy of the tape would aid its investigation. This factual dispute corresponds roughly to the remaining *Roadway* factors: if the tape contains sensitive information, disclosure could be unduly burdensome, and if the tape is not necessary for the investigation, it is not relevant. *See id.*

Our resolution of the controversy necessarily begins by acknowledging that courts are obliged to grant prison officials a wide berth in the execution of policies and practices needed to maintain prison discipline and security. *Overton v. State*, 493 N.W.2d 857, 860 (Iowa 1992). But the record before us contains no facts to support the concern over prison security al-leged here. Neither the tape itself nor any description of its contents were in evidence for the court's review. Aside from knowledge that the videotape revealed an "incident" in a "hospital sideroom," the district court had nothing upon which to base its decision but the defendants' conclusory allegations.

Even if we assume that an unauthorized view of the videotape could pose a threat to security, the defendants have articulated no reason why giving the Citizens' Aide its own copy would increase that risk. The court's order already permits the Citizens' Aide "unlimited" access to view the tape. If it were copied, it would retain its confidential status. *See* Iowa Code § 601G.9(3) ("Confidential documents provided to the citizens' aide by other agencies shall continue to maintain their confidential status."). We believe the Citizens' Aide is entitled to a presumption that it will uphold its statutory duties and protect the integrity of the tape and the information contained on it.

Equally unconvincing is defendants' argument that the Citizens' Aide has no need for the tape; that it is somehow irrelevant to its investigation. They confidently assert that the requested copy "could not add to nor meaningfully detract from Ombudsman's investigation." We are persuaded that such judgments about the methods used by the Citizens' Aide to complete its investigation are not for the department of corrections to make. To decide otherwise would stand the agency's investigative power on its head.

The Citizens' Aide has advanced cogent reasons to support its claimed need for a separate copy of the tape, not the least of which is convenience. In order to corroborate other evidence, and compare the taped scene with oral and written statements given by the participants, repeated viewing will be necessary. This examination would clearly be hampered by the requirement of travel to department of corrections headquarters for each viewing. In analogous contexts, the right to copy discovery material has long been held essential to an advantageous exercise of the right of in-

spection. *Lehman v. National Benefit Ins. Co.*, 243 Iowa 1348, 1357, 53 N.W.2d 872, 877 (1952). We find that the district court's contrary conclusion is simply untenable.

In short, we are convinced that this record contains no support for the conclusions underlying the district court's protective order. Thus we reverse the decision of the court and remand this matter for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**