**CENTRAL MAINE POWER COMPANY**

v.

**MAINE PUBLIC UTILITIES COMMIS-
SION, IMC Chemical Group, Inc., and
Bangor Hydro-Electric Company.**

Supreme Judicial Court of Maine.

Nov. 30, 1978.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster by Gerald M. Amero (orally), George Marcus, Portland, Seward B. Brewster, Augusta, for plaintiff.

Preti & Flaherty by Harold C. Pachios (orally), Portland, for IMC Chemical.

Frederick S. Samp (orally), Augusta, for P.U.C.

Hewes, Culley & Feehan by John G. Feehan (orally), Portland, for Bangor Hydro-Elec.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., and DUFRESNE, A. R. J.

GODFREY, Justice.

The issues presented by this case come before this Court from two directions. Central Maine Power Company ("CMP") appeals from a Superior Court dismissal of its complaint, made under Rule 80B of the Maine Rules of Civil Procedure, seeking review of certain orders of the Public Utilities Commission. The Superior Court held that

it lacked jurisdiction over the subject matter because the legislature had vested such jurisdiction exclusively in the Supreme Judicial Court. Pursuant to 35 M.R.S.A. § 305, CMP also seeks direct review by complaint in the Law Court of Commission orders arising from the same proceedings. A procedural order of the Law Court, dated November 7, 1977, consolidated CMP's Rule 80B appeal with its section 305 action. No appeal under section 303 of 35 M.R.S.A. is involved in this case.

We grant judgment for the Commission on the section 305 action and deny the Rule 80B appeal as moot.

I

*Background and Proceedings Below*

On August 12, 1975, Sobin Chemicals, Inc., now IMC Chemical Group, Inc., ("Sobin") filed an "informal complaint" ("the Sobin complaint") with the Commission. The facts alleged in the informal complaint may be summarized as follows:

Sobin operates a plant for the manufacture of chlorine and caustic soda in Orrington, Maine. Sobin purchases all its electricity requirements for the plant from Bangor Hydro-Electric Company ("Bangor Hydro"), which serves the town of Orrington. In 1974, Sobin purchased almost 243 million kilowatt-hours of electricity from Bangor Hydro. In December, 1974, Sobin was paying Bangor Hydro 27 mills per kilowatt-hour for electricity, all of which was provided on an "interruptible basis."[1] Sobin claimed that rate to be "clearly unreasonable." In contemplation of a plant expansion requiring each year an additional 250–350 million kilowatt-hours, Sobin asked Bangor Hydro whether it could satisfy the additional requirement and what the expectable cost would be to Sobin. Bangor Hydro replied that it could supply part of Sobin's need on an interruptible basis but could supply the rest only on a firm contract basis at a higher cost.

The Sobin complaint stated that appellant CMP, which serves the neighboring town of Bucksport, has a more adequate supply of electricity at significantly lower rates. Accordingly, Sobin claims that Bangor Hydro's rates are comparatively unreasonable for the region and subject Sobin to "geographic discrimination."

In July, 1975, Sobin proposed by letter to CMP that Sobin take its electricity from CMP power lines which were located within the Bucksport service area, a distance of three miles from the Orrington plant. CMP replied that it could not enter into discussions with Sobin regarding such electric service because CMP had "no charter authority to serve in the Town of Orrington."

The Sobin complaint requested the Public Utilities Commission to

"1. Determine that Sobin's plan for taking an electricity feed at Bucksport is not inconsistent with 35 M.R.S.A. § 2301 and order CMP to provide electric service to Sobin in Bucksport for ultimate use in Orrington; or

"2. Pursuant to the provisions of 35 M.R.S.A. § 2302, hold a public hearing and find that Hydro's rates to Sobin are unreasonable; that Sobin is being discriminated against in the matter of electricity rates; and Hydro is unable to provide Sobin with adequate service; and that based on the foregoing, public convenience and necessity require that CMP provide electric service to Sobin in the Town of Orrington."

Thus the Sobin complaint raised important issues concerning the so-called "territorial integrity" of these two public utilities.[2]

1. Sobin's brief thus explains the nature of "interruptible" power:

"IMC [Sobin] purchases power on an 'interruptible' basis. In essence, this means that the power company may, for a maximum number of hours per year (set by contract between the parties) unilaterally curtail the IMC electric load. This is normally done when the requirements of Bangor Hydro's 'firm demand' customers approach the company's limit of available power. Interruptible power is a form of off-peak power provided to the customer on an 'as available' basis; it is less costly than firm power supply."

2. The principal statutory provisions governing the Commission's power to authorize one pub-

On its own motion, purporting to act pursuant to its investigatory powers under 35 M.R.S.A. § 296,[3] the Commission issued a "Notice of Investigation" on August 27, 1975, entitled *Sobin Chemicals Inc., Re: Investigation into Alleged Unreasonable and Discriminatory Rates of Bangor Hydro-Electric Company* ("U. # 3118"). The notice of investigation provided

"that Bangor Hydro-Electric Company and Central Maine Power Company be placed on notice that the Commission is formally investigating the issues raised by Sobin Chemicals, Inc., in its informal complaint as provided for in 35 M.R.S.A. 296 and that in addition to matters involving the rates and service of Bangor Hydro-Electric Company to Sobin Chemicals, Inc., the subject matter of 35 M.R.S.A. 294, 2301–2302 will in addition be a subject of the inquiry and determination . . . ."

---

lic utility to furnish service in or to the established service territory of another utility are found in 35 M.R.S.A. §§ 294, 2301 and 2302. 35 M.R.S.A. § 294 provides, in part:

"If upon such formal public hearing the rates, tolls, charges, schedules or joint rates shall be found to be unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of chapters 1 to 17, the commission shall have power to fix and order substituted therefor such rate or rates, tolls, charges or schedules as shall be just or reasonable. If upon such public hearing it shall be found that any regulation, measurement, practice, act or service complained of is unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any of the provisions of chapters 1 to 17 or if it is found that any service is inadequate or that any reasonable service cannot be obtained, the commission shall have power to establish and substitute therefor such other regulations, measurements, practice, service or acts, and to make such order respecting and such changes in such regulations, measurements, practice, service and acts as shall be just and reasonable.

"The commission may authorize any public utility organized by special Act of the Legislature to furnish or extend its service in, to or through any city or town notwithstanding any territorial limitations, express or implied, in the special Act of the Legislature by which it was organized, or in any special Act of the Legislature under which it is enfranchised, and the powers and limitations of the commission, made applicable hereunder, shall be those applicable by law in like cases concerning public utilities organized under or pursuant to Title 13–A or any prior general corporation law. . . . "

35 M.R.S.A. § 2301 provides, in part:

"Corporations for . . . the purpose of making, generating, selling, distributing and supplying gas or electricity, or both, for lighting, heating, manufacturing or mechanical purposes, in any city or town, or 2 or more adjoining cities or towns, within the State, or for either or any of such purposes, may be organized under Title 13–A. No corporation for either or any of such purposes, whether organized or authorized to do business under this section or by special Act of the Legislature, or any person, association or cooperative organized under chapters 221 to 227 shall have authority without the consent of the Public Utilities Commission to furnish its service in or to any city or town in or to which another corporation, person, association or cooperative is furnishing or is authorized to furnish a similar service. . . . "

35 M.R.S.A. § 2302 provides:

"No consent, authorized in section 2301, and no license, permit or franchise shall be granted to any person, association, corporation or cooperative to operate, manage or control any public utility of the kind named in section 2301 in any city or town where there is in operation a public utility engaged in similar service or authorized therefor, until the Public Utilities Commission has made a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility. The Public Utilities Commission, in its discretion, may make a declaration without public hearing, if it appears the utility serving or authorized to serve, the utility seeking consent from the commission to provide service and the customer or customers to receive service agree that the utility seeking consent to serve should provide service."

3. 35 M.R.S.A. § 296 provides:

"Whenever the commission believes that any rate or charge is unjust or unreasonable, or that any service is inadequate or cannot be obtained, or that an investigation of any matter relating to any public utility should for any reason be made, it may, on its own motion, summarily investigate the same with or without notice. If after making such summary investigation the commission becomes satisfied that sufficient grounds exist to warrant a formal public hearing being ordered as to matters so investigated, it shall furnish such public utility interested a written statement giving notice of the matter under investigation. Seven days after such notice has been given, the commission may proceed to set a time and place for a formal public hearing as provided."

In response to the Commission's order to file comments concerning the pending investigation, CMP submitted a letter stating that it had never undertaken or manifested any intention to undertake the provision of electric service in or to the Town of Orrington. CMP contended that the Commission did not have jurisdiction to grant the relief requested in the Sobin complaint and, even if it had such jurisdiction, could not legally grant such relief.

Bangor Hydro likewise sought to terminate the investigation at its inception. Bangor Hydro filed a "Motion to Dismiss Sobin Complaint and Commission Investigation Relative Thereto" on the ground that the Commission lacked authority to investigate its rates on the basis alleged in the Sobin complaint; i. e., "solely upon a comparison of rates and services of Bangor Hydro-Electric Company and Central Maine Power Company." In addition, Bangor Hydro filed a "Motion to Separate Matters Under Investigation and to Dismiss as to Bangor Hydro-Electric Company," on the ground that the portion of the Commission's investigation with respect to the effect of 35 M.R.S.A. §§ 294, 2301 and 2302 should be conducted as an investigation including all public utilities and not as one directed solely against Bangor Hydro.

The Commission made no further orders on the Sobin informal complaint after issuing its notice of investigation dated August 27, 1975, until it issued a "Notice of Pre-Hearing Conference," dated January 5, 1977. Meanwhile, on January 30, 1976, Bangor Hydro initiated proceedings for a rate increase by filing with the Commission a new schedule of rates under 35 M.R.S.A. § 64. Pursuant to its authority under 35 M.R.S.A. § 69, the Commission suspended the proposed rates and proceeded to conduct an investigation into their reasonableness. Sobin was granted intervenor status in the proceedings, with an opportunity to challenge the reasonableness of Bangor Hydro's proposed rates. By its decree dated November 1, 1976, the Commission found that Bangor Hydro was entitled to an increase in rates, though less than originally requested. Re Bangor Hydro-Electric Co.,

16 P.U.R. 4th 244 (Me.Pub.Util.Comm'n 1976). Sobin's rate design was noted, without mention of the proceedings here in question. In a supplemental order dated November 12, 1976, the Commission approved the new rate schedules filed by Bangor Hydro. Sobin did not seek judicial review of the Commission's order.

The Commission's "Notice of Pre-Hearing Conference," dated January 5, 1977, designated not only Bangor Hydro but also CMP as "parties to the proceeding." At the prehearing conference, held on January 14, 1977, appearances were noted for Sobin, Bangor Hydro, and the Commission staff. CMP did not enter a formal appearance but was represented by counsel, who explained its objections to being made a party to the proceedings. The parties agreed to submit briefs on whether CMP could properly be made a party to the proceedings and whether the Commission had jurisdiction over the subject matter of the proceedings.

On April 21, 1977, the Commission issued its decision in a "Notice of Procedure," which included the order "that Central Maine Power Company is hereby made a party to this proceeding." The Commission also denied Bangor Hydro's motions to dismiss and to separate and indicated that it was preparing to go forward with public hearings. Commissioner Smith dissented on the ground that "the Commission lacks jurisdiction to act as requested."

On April 26, 1977, CMP filed with the Commission a "Motion for Findings of Fact and Conclusions of Law"; on April 29, it filed a "Motion to Dismiss and Request for Findings of Fact and Conclusions of Law"; and, on May 10, it filed an "Application to Vacate Order of Commission dated April 21, 1977." The Commission's order of June 2, 1977, denied all CMP's requests.

On May 9, 1977, Sobin filed with the Commission a "Motion to Compel the Production of Papers, Documents and Testimony" with respect to certain data requests it had previously filed seeking information from CMP.

On May 20, 1977, in response to the Commission's order that it be made a party, CMP sought judicial relief by commencing an action in Kennebec County Superior Court under Rule 80B of the Maine Rules of Civil Procedure. The complaint named the Commission, Sobin, and Bangor Hydro as defendants and requested that the Superior Court (1) declare that the Commission was without jurisdiction to grant the relief requested by Sobin, (2) declare that the Commission was without jurisdiction to order CMP to become a party to the proceedings, and (3) restrain the Commission from issuing any order in the proceedings and from conducting further proceedings in the matter. On June 3, 1977, Bangor Hydro filed a cross-claim also seeking to restrain the Commission. CMP periodically amended its complaint to account for subsequent Commission orders compelling it to provide information. CMP requested the Superior Court to declare those orders to be beyond the Commission's jurisdiction and to enjoin their enforcement by the Commission.

On October 25, 1977, the Superior Court dismissed CMP's complaint and Bangor Hydro's cross-claims for lack of subject-matter jurisdiction because "35 M.R.S.A. §§ 303 and 305 grant exclusive jurisdiction over the subject matter to the Supreme Judicial Court."[4] CMP filed a notice of appeal from the dismissal order on October 31, 1977, and the appeal forms part of the consolidated proceeding now before this Court.

While CMP's 80B complaint was pending in Superior Court, the Commission issued its order of June 2, 1977, denying motions made by CMP and Bangor Hydro and directing that the parties either answer all outstanding requests for data within thirty days or file specific objections within seven days. Finally, in its June 2 order, the Com-

mission stated that it would continue to investigate formally, under the authority of 35 M.R.S.A. § 296, the following matters:

"a. Whether the rates charged to Sobin Chemicals, Inc. by Bangor Hydro-Electric Company are unjust or unreasonable;

b. Whether the service provided to Sobin Chemicals, Inc. by Bangor Hydro-Electric Company is inadequate;

c. Whether Bangor Hydro-Electric Company will be able to provide adequate service at just and reasonable rates if Sobin Chemicals, Inc., significantly increases its demand for electricity;

d. Whether the Commission has the authority, pursuant to 35 M.R.S.A. § 294, § 2301, § 2302 or any other provision of law, to require Central Maine Power Company to provide service to Sobin Chemicals, Inc. in the Town of Orrington;

e. The criteria that should be used in determining whether to require Central Maine Power Company to provide service to Sobin Chemicals, Inc. in the Town of Orrington if it is determined that the Commission has the authority to so order;

f. Whether the Commission has the authority to require Central Maine Power Company to allow Sobin Chemicals, Inc. to connect into Central Maine Power Company lines in the Town of Bucksport;

g. The criteria that should be used in determining whether to require Central Maine Power Company to allow Sobin Chemicals, Inc. to connect into Central Maine Power Company lines in the Town of Bucksport if it is determined that the Commission has the authority to so order;

h. Whether the criteria under (e) or (g) have been met and whether another action is appropriate; whether an appropriate order should issue;

---

4. 35 M.R.S.A. § 303 provides, in part:

"An appeal from a final decision of the commission may be taken to the law court on questions of law in the same manner as an appeal from a judgment of the Superior Court in a civil action. . . ."

35 M.R.S.A. § 305 provides, in part:

"Notwithstanding sections 303 and 304, in all cases in which the justness or reasonable-

ness of a rate, toll or charge by any public utility or the constitutionality of any ruling or order of the commission is in issue, the law court shall have jurisdiction upon a complaint to review, modify, amend or annul any ruling or order of the commission, but only to the extent of the unlawfulness of such ruling or order. . . ."

i. Any other matters which may arise during the course of the investigation . . . ."

Whether the Commission has statutory authority to conduct such an investigation constitutes the crucial substantive issue before this Court.

On June 9, 1977, CMP filed its objections to Sobin's requests for data, asserting as one ground that it was not properly a party to any proceeding in which such requests were propounded. On August 8, 1977, the Commission denied each of CMP's objections to Sobin's data requests and ordered it to respond to all outstanding requests within thirty days. The Commission stated that the requested information was included within the scope of its investigation as defined by its order of June 2, 1977. The Commission stated also that it was authorized by statute to obtain such information from a public utility subject to its jurisdiction. The order compelling answers to outstanding data requests was subsequently extended on August 22, 1977 (to September 27), on September 13, 1977 (to November 6), and on November 1, 1977 (to December 1), pending disposition of CMP's proceedings in the Superior Court and Law Court.

On September 7, 1977, CMP filed a complaint with this Court pursuant to 35 M.R.S.A. § 305, alleging that the Commission's order compelling response to Sobin's data requests

"is unlawful and constitutes a violation of the 5th and 14th Amendments to the United States Constitution and Article I § 6–A of the Maine Constitution, in that the Commission is without lawful authority to grant the relief requested by Sobin in U. # 3118 and therefore acts in excess of its jurisdiction and without due process of law in ordering CMP to respond to data requests submitted by Sobin in said U. # 3118."

The section 305 complaint alleged, among other things,

(1) that the preparation and production of responses to the data requests "will impose upon CMP an immediate and substantial financial burden";

(2) that the Town of Orrington, where Sobin is located, is outside the service territory of CMP and CMP has never undertaken to provide electric service to any customers in Orrington;

(3) that Orrington is within the franchise service territory of Bangor Hydro;

(4) that CMP does not seek the authority or consent of the Commission to serve Sobin or any other customer in Orrington and never has sought such authority or consent.

In its answer to the section 305 complaint, the Commission denied that it was exceeding its statutory authority or violating CMP's constitutional rights. It denied also that it had sufficient knowledge to determine the cost of preparing responses to the data requests or to respond to the allegations that Orrington is not and was never within CMP's service territory. The Commission moved to dismiss the complaint on the grounds

(1) that "the Complaint is not ripe for review" under section 305,

(2) that the Commission has not exercised its "primary jurisdiction over the subject matter," and

(3) that the complaint fails to state a claim upon which relief can be granted, because the order of August 8, 1977, was authorized by title 35 of the Maine Revised Statutes.

On November 3, 1977, Justice Pomeroy of this Court issued an "Order of Stay and Preliminary Injunction," staying the effect of Commission orders compelling response to data requests and staying further Commission action in U. # 3118 with respect to CMP. By order dated November 7, 1977, CMP's 80B appeal and section 305 complaint were consolidated under a single docket number in the Law Court.

## II

### Jurisdiction of the Law Court Under Section 305

CMP does not invoke our jurisdiction under section 305 to review the justness or

reasonableness of a rate, toll or charge. Rather, it invokes that jurisdiction to review the Commission's orders on the ground that their constitutionality is in issue insofar as they affect CMP. Therefore, we must consider as a threshold question whether the pleadings in the section 305 action present an issue as to the constitutionality of those orders as they may apply to CMP.

■ CMP's section 305 complaint contains several allegations that the Commission has acted beyond the scope of its statutory power in issuing its orders. A mere allegation that the Commission has exceeded its statutory authority does not suffice in itself to invoke our section 305 jurisdiction. *New England Tel. & Tel. Co. v. Public Util. Comm'n,* Me., 354 A.2d 753 (1976). *See also Central Maine Power Co. v. Public Util. Comm'n,* Me., 382 A.2d 302, 326 (1978); *Lewiston, Greene & Monmouth Tel. Co. v. New England Tel. & Tel. Co.,* Me., 299 A.2d 895, 903 n. 8 & 911 n. 18 (1973).

However, CMP's complaint further alleges that in ordering CMP to comply with the data requests the Commission acted "without due process of law" in violation of the due process and anticonfiscation clauses of the federal and state constitutions. The complaint nowhere alleges that the Commission did not follow all procedures required by statute and administrative rules for issuance of its orders. We must infer, therefore, that CMP asserts that its constitutional immunities are violated by actions of the Commission exceeding the scope of its authority. However, the complaint does not allege explicitly in what respect the Commission's orders would "take" CMP's property or "deprive" CMP of property.

In accordance with the policy expressed in Rule 8(f) M.R.Civ.P., that all pleadings must be so construed as to do substantial justice,[5] we search CMP's section 305 complaint for allegations of fact that could serve as the basis for CMP's claim that compliance with the Commission's orders in U. # 3118 would result in "taking" CMP's property or "depriving" CMP of its property.

■ Considering all the allegations of the complaint, including the allegation that compliance with the data requests "will impose on CMP an immediate and substantial financial burden," we are satisfied that they do not support a claim of a "taking" of CMP's property within the traditional meaning of the fifth amendment of the United States Constitution or section 21 of article I of the Maine Constitution. *See Champlin Ref. Co. v. United States,* 329 U.S. 29, 67 S.Ct. 1, 91 L.Ed. 22 (1946).

The more difficult question is whether the allegations suffice to support a claim that CMP has been "deprived" of property without due process of law, for the purpose of determining the Law Court jurisdiction to review under section 305. Because of the peculiarity of the Maine statutory arrangements governing this Court's jurisdiction to review Commission orders, there is no authority squarely on point. In cases in other jurisdictions in which business concerns have sought to resist administrative subpoenas on the ground that their enforcement would violate "due process rights," the nature of the constitutionally protected interest of the subpoenaed businesses is seldom analyzed. *See, e. g., United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *United States v. Litton Industries, Inc.,* 462 F.2d 14 (9th Cir. 1972); *United States v. Empire Gas Corp.,* 419 F.Supp. 34 (W.D.Mo.1976), *aff'd,* 547 F.2d 1147 (Temp.Emer.Ct.App.1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592 (1977); *State ex rel. Railroad & Warehouse Comm'n v. Mees,* 235 Minn. 42, 49 N.W.2d 386 (1951). In the rare instances where courts have adverted to the nature of the petitioner's property interest, they have suggested that perhaps a property interest can be found in the cost to the petitioner of complying with the subpoena of an administrative agency engaged in an investigation.

---

**5.** *See Casco Bank & Trust Co. v. Rush,* Me., 348 A.2d 239 (1975); *Jones v. Billings,* Me., 289 A.2d 39 (1972).

*See New York State Elec. & Gas Corp. v. Maltbie,* 169 Misc. 144, 7 N.Y.S.2d 235, 239 (Sup.Ct.1938).

■ The parties to this litigation have not briefed and argued the threshold question of our jurisdiction. They have assumed that CMP's allegations of a violation of constitutional due process and the Commission's denial of those allegations generate a section 305 constitutional issue. We shall therefore treat this case as coming within our section 305 jurisdiction. We do so in recognition of the strong tendency of federal and state courts to examine the legality of administrative investigations in terms of "due process" without attention to the exact nature of the interest for which constitutional protection is sought. Final determination of this jurisdictional question must await a case in which the issue is addressed directly and fully by the parties.

### III

### *Appropriateness of Exercising Section 305 Jurisdiction*

The Commission and Sobin argue that the related doctrines of "ripeness", "exhaustion of administrative remedies", and "primary jurisdiction" make review of the Commission's orders inappropriate at the present stage of the proceedings. We reject that argument.

■ In *Lewiston, Greene & Monmouth Tel. Co. v. New England Tel. & Tel. Co.,* Me., 299 A.2d 895 (1973), we held that under section 305 the Law Court has jurisdiction "to decide the *constitutionality* of *any* ruling or order of the Public Utilities Commission regardless of whether the order might have been forthcoming before the completion of the administrative tribunal's processes or had achieved a status which could be deemed 'final' (whether in the conventional sense connoted by any statute, generally, authorizing 'appeals' from 'final judgments' of a Court or, specifically, the statute (35 M.R.S.A. § 303) authorizing an 'appeal' from a 'final' decision of the Public Utilities Commission itself)." *Id.* at 906.

Thus, we have jurisdiction to review Commission rulings or orders of an "interlocutory" nature, such as those challenged here, if their constitutionality is in issue.

However, the existence of such jurisdiction in the Law Court does not necessarily warrant its exercise with respect to any action of the Commission or at any stage of its proceedings.

"We hold that . . . there is operative, in relation to the jurisdiction reposed in the Law Court under Section 305, a principle of 'ripeness' by which the Law Court may control the appropriateness of its judicial intervention into proceedings before the Public Utilities Commission; and this principle of 'ripeness' functions not to prescribe a lack of jurisdiction in the Law Court but as a guide, deriving from judicial self-restraint, to the Law Court's *exercise* of a jurisdiction avowedly existing under Section 305." *Lewiston, Greene & Monmouth Tel. Co., supra,* at 908.

*See also Maine Water Co. v. Public Util. Comm'n,* Me., 388 A.2d 493, 498–99 (1978):

"The inquiry in any case where ripeness is in issue should focus on 'the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration.'"

■ We find the issues we consider here to be ripe for review under the standards applied in those two cases.

In *Lewiston, Greene & Monmouth Tel. Co., supra,* we found ripe for judicial review the Commission's order that New England furnish information for the implementation of the Commission's proposed settlement plan. Similar considerations compel a finding of ripeness in this case. *Compare Maine Water Co. v. Public Util. Comm'n, supra.*

Like New England in the *Lewiston, Greene & Monmouth Tel. Co.* case, CMP is subject to Commission orders directing it to take specific action within prescribed time limits. Whether those orders violate CMP's right to due process of law is the primary issue in this case. That legal issue is now fit for judicial decision.

The absence of one factor which contributed to a finding of ripeness in the *Lewiston, Greene & Monmouth* case does not affect our conclusion here. In that case we noted that the Commission's order revealed an avowed commitment by the Commission to effectuate its own plan in accordance with principles, formulas and computations meticulously prescribed in its order. Because the proceedings before the Commission below are now suspended in the initial steps of the investigatory stage, the Commission has not yet had the opportunity to develop a plan of action. A determination by this Court of the legality of any final action by the Commission as a result of its investigation must await the actual implementation of such action or the imminent threat of it. The narrow question before us is whether the Commission has violated CMP's right to due process of law by issuing its orders in U. # 3118, and that question is ripe for review.

■ The Commission and Sobin also ask us to apply the related doctrines of "exhaustion of administrative remedies" and "primary jurisdiction." Those doctrines might be applicable if the basic issue were CMP's challenge to the validity of some hypothetical ultimate order requiring it to render service beyond what it claims to be its territorial limits. However, the basic issue is limited to the validity of the Commission's pending orders to CMP in U. # 3118, to supply the information sought in the data requests. The basic issue being thus limited, exhaustion of administrative remedies and primary jurisdiction are not considerations precluding the exercise of our assumed jurisdiction under section 305.

## IV

### Criteria for Review of the Commission's Orders

■ The principal issue is whether the Commission may lawfully order CMP to respond to the four data requests submitted by Sobin. CMP claims that such orders violate its due process rights because the Commission is acting "without lawful authority" and "in excess of its jurisdiction." The validity of that claim depends on whether the Commission acted pursuant to powers expressly delegated to it by the legislature and such incidental powers as are necessary to the full exercise of those powers. *New England Tel. & Tel. Co. v. Public Util. Comm'n,* Me., 390 A.2d 8, 57 (1978); *City of Rockland v. Camden & Rockland Water Co.,* 134 Me. 95, 97, 181 A. 818, 819 (1935).

CMP challenges the legality of the orders in question and the underlying investigation on the ground that the Commission lacks the power to grant Sobin the relief requested in its informal complaint. CMP perceives the central issues to be whether the Commission has the statutory authority to order CMP to provide electricity to Sobin for use at its Orrington plant, and, if so, whether such an order violates the constitutional rights of CMP. CMP argues that because the Commission cannot lawfully compel CMP to serve Sobin the investigation, premised on Sobin's informal complaint, and the orders issued therein are beyond the Commission's jurisdiction and authority.

CMP does not give sufficient consideration to the critical issue, namely, whether the Commission's orders requiring CMP to provide the information requested by Sobin are a lawful exercise of its investigative powers. We now turn to that question.

### A. General Principles: The Criteria

In a trilogy of leading cases the Supreme Court of the United States has carefully considered the criteria governing judicial review or enforcement of federal administrative subpoenas.[6] The import of those

---

6. Most federal and state agencies compel the disclosure of information by means of an administrative subpoena, which requires application to a court for an enforcement order. 1 F. Cooper, *State Administrative Law* 294–98 (1965). In this case, CMP is subject to a direct order by the Commission to provide certain information. Despite the difference in posture between this case and the federal cases, their holdings and rationale afford appropriate guidance.

decisions is that judicial review of administrative information-gathering activities is to be strictly limited.

The initial case was *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), in which the Supreme Court held that, upon a petition by the Secretary of Labor for enforcement of a subpoena issued in an administrative proceeding against an employer under the Walsh-Healy Act, the federal district court lacked authority to determine whether the employer's activities were within the "coverage" of the Act, as a precondition to the enforcement of the subpoena. The Court said:

> "The evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act, and it was the duty of the District Court to order its production for the Secretary's consideration." 317 U.S. at 509, 63 S.Ct. at 343.

Thus, the question of coverage was not a proper subject of inquiry upon judicial review of an administrative subpoena. The judicial inquiry was to go no further than whether the information sought was plainly irrelevant to any lawful purpose which the agency might have had.

Any doubt whether the Court's decision was to be limited just to subpoenas issued under the Walsh-Healy Act was laid to rest by *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The Court applied the same principles to the enforcement of subpoenas issued pursuant to an investigation under the Fair Labor Standards Act. Again holding that the district court lacked authority to determine the issue of coverage upon an applica-tion for enforcement of an administrative subpoena, the Court ruled that enforcement must be granted if (1) "the inquiry is one the demanding agency is authorized by law to make," (2) "the materials specified are relevant" to the inquiry, and (3) the disclosure sought is reasonable. 327 U.S. at 208–09, 66 S.Ct. at 505. *See Adams v. Federal Trade Commission*, 296 F.2d 861, 866 (8th Cir. 1961), *cert. denied*, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962); 1 F. Cooper, *State Administrative Law* 299 (1965).

In the third case, the Supreme Court upheld an order of the Federal Trade Commission requiring certain corporations to provide information demonstrating continued compliance with a cease-and-desist order. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). The order was sustained against arguments that it violated, *inter alia*, the due process clause of the Fifth Amendment. Again the Court emphasized that the judicial role with respect to the enforcement of administrative subpoenas is necessarily a limited one:

> "Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.
>
> Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. . . . But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." 338 U.S. at 652, 70 S.Ct. at 369.[7]

---

**7.** The Supreme Court has since reaffirmed these principles in the context of an I.R.S. investigation:

> "[The Commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the commissioner's possession, and that the administrative steps required by the Code have been followed . . . ." *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

*See also Federal Trade Comm'n v. Crafts*, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957), *rev'g per curiam, Crafts v. Federal Trade Comm'n*, 244 F.2d 882 (9th Cir. 1957).

The Supreme Court's decisions reflect a judicial policy of limited interference with administrative investigations and deference to agency proceedings brought pursuant to statutory authority. State court decisions are in accord with the federal approach. *E. g., Brovelli v. Superior Court,* 56 Cal.2d 524, 15 Cal.Rptr. 630, 364 P.2d 462 (1961); *Illinois Crime Investigating Comm'n v. Buccieri,* 36 Ill.2d 556, 224 N.E.2d 236 (1967), *cert. denied,* 389 U.S. 848, 88 S.Ct. 75, 19 L.Ed.2d 117; *In re Iowa State Commerce Comm'n,* 252 Iowa 1237, 110 N.W.2d 390 (1961); *State ex rel. Railroad & Warehouse Comm'n v. Mees,* 235 Minn. 42, 49 N.W.2d 386 (1951).

■ We find the rationale of those cases persuasive and adopt the following principles as standards for judicial review of a demand for information made by an administrative agency. Such a demand is enforcible if (1) the inquiry is one the demanding agency is authorized by law to make, (2) the information sought is relevant to the authorized inquiry, and (3) the disclosure sought is reasonable; *i. e.,* the demand is not disproportionately burdensome or unreasonably broad.

B. *CMP's Challenge to the Commission's Authority to Act with Respect to the Subject Matter of the Investigation: "Coverage"*

CMP's argument focuses on an alleged lack of authority in the Commission to act with respect to Sobin's complaint, rendering invalid its orders in U. # 3118. CMP argues that the power to investigate is limited by the power to regulate and that the Commission lacks the power to regulate in this matter.

■ The scope of the Commission's authority to investigate is not limited by *the scope* of ultimate action that it may properly take on the basis of the information acquired. It is not one of the criteria to be considered upon judicial review of the Commission's orders to produce information.

■ As the Supreme Court made clear in *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), the question whether the subject of the investigation is within the coverage of the statute in question is not an appropriate consideration for a court confronted with an application for subpoena enforcement. In that case the Secretary had made no preliminary determination that the corporation's employees were covered by the Walsh-Healy Act before proceeding to investigate for substantive violations of the Act. The Supreme Court found no infirmity in the Secretary's approach:

"Of course another indispensable element of violation is that the underpaid employee be included within the benefits of the Act and contracts. This, too, was a matter under investigation in the administrative proceeding. But because she sought evidence of underpayment before she made a decision on the question of coverage and alleged that she "had reason to believe" the employees in question were covered, the District Court refused to order its production, tried the issue of coverage itself, and decided it against the Secretary. This ruling would require the Secretary, in order to get evidence of violation, either to allege she had decided the issue of coverage before the hearing or to sever the issues for separate hearing and decision. The former would be of dubious propriety, and the latter of doubtful practicality. The Secretary is given no power to investigate mere coverage, as such, or to make findings thereon except as incident to trial of the issue of violation. No doubt she would have discretion to take up the issues of coverage for separate and earlier trial if she saw fit. Or, in a case such as the one revealed by the pleadings in this one, she might find it advisable to begin by examining the payroll, for if there were no underpayments found, the issue of coverage would be academic. On the admitted facts of the case the District Court had no authority to control her procedure or to condition enforcement of her subpoenas upon her first reaching and announcing a decision on some of the issues in her

administrative proceeding." 317 U.S. at 508–09, 63 S.Ct. at 343.

It is now settled that in a proceeding to enforce an administrative subpoena a court may not inquire into the agency's substantive power to regulate where the agency has been granted lawful authority to conduct the investigation. *Federal Maritime Comm'n v. Port of Seattle*, 521 F.2d 431 (9th Cir. 1975); *Securities & Exchange Comm'n v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047 (2d Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974). *But cf. Federal Trade Comm'n v. Miller*, 549 F.2d 452 (7th Cir. 1977). *See* K. Davis, *Administrative Law*, §§ 3.10, 3.12 (1958).

Moreover, there is no requirement that the agency itself make a determination of coverage before proceeding to consider substantive questions. *Endicott Johnson Corp. v. Perkins, supra*, 317 U.S. at 508–09, 63 S.Ct. 339; *Securities & Exchange Comm'n v. Brigadoon Scotch Distributing Co., supra*, at 1055; *Newmark & Co. v. Wirtz*, 330 F.2d 576 (2d Cir. 1964); *Davis, supra*, § 3.12 n. 29.

"Although it might well save time and expense for all concerned if the Administrator first examined such records as were relevant to coverage and then proceeded beyond that only if convinced that appellant were covered, the Oklahoma Press decision makes it plain that the course of the investigation is for the Administrator to determine. If appellant believes that the nature of its operations is not such as to render it subject to the Act, it can properly litigate that issue if and when the Administrator attempts to enforce the Act's substantive requirements against it after the completion of the administrative investigation." *Newmark & Co. v. Wirtz, supra*, at 578.

Therefore, we find it inappropriate, on judicial review of Commission orders to produce information, to consider the extent of the Commission's ultimate authority to act on matters that might arise out of its inquiry. The action, if any, that the Commission ultimately takes on the basis of the information developed by its inquiry remains for the Commission to determine in the first instance. The scope of the Commission's power to investigate may not be measured by the scope of its power to regulate. At this stage of the proceedings, its investigatory orders must be judged solely by the criteria of lawful authority to investigate, relevancy, and reasonableness.

In light of the above discussion, we interpret CMP's argument to be that there is no bona fide factual issue of "coverage" in this case for the Commission to determine and therefore only legal questions remain, which may be properly decided by the Law Court. *Cf. Federal Trade Comm'n v. Miller*, 549 F.2d 452 (7th Cir. 1977). CMP perceives the investigation instigated by Sobin's informal complaint to be solely an inquiry into the propriety of ordering CMP to provide service to Sobin. CMP claims that it has established as a matter of fact that it has never undertaken to serve customers in the Town of Orrington and, therefore, the Commission has no authority to order it to do so. Accordingly, CMP would argue that there is no coverage as a matter of law and no issue of coverage remains for factual determination by the Commission. Because, in CMP's view, there are no factual issues remaining for investigation, CMP requests this Court to hold any further inquiry by the Commission to be invalid and unlawful.

It is unnecessary to pass upon the merits of such an argument inasmuch as the facts do not support its application in this case. CMP claims it has established as a matter of fact the absence of any undertaking on its part to provide service to customers in Orrington, by its allegations to that effect in its verified complaints in the Rule 80B action in the Superior Court and the section 305 action in the Law Court. In the Rule 80B action, CMP filed a motion for summary judgment, based on its complaint and verified amended complaint, which alleged, among other things, that it had never undertaken to provide service to customers in the Town of Orrington. Because neither the Commission nor Bangor Hydro nor So-

bin filed any counter-affidavits or presented any evidence to the contrary, CMP claims that, for purposes of this proceeding, it must be taken as established that CMP has never undertaken to provide service to customers in the Town of Orrington.

A closer analysis of what occurred in the Superior Court demonstrates that this argument is not well founded. CMP filed its original 80B complaint in Superior Court on May 20, 1977, and its verified amended complaint on June 21, 1977. Rather than file answers to the complaint, Sobin, on June 2, 1977, and the Commission, on June 7, 1977, filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), M.R.Civ.P., on the grounds, *inter alia*, that the Superior Court did not have jurisdiction over the subject matter of the complaint. On June 21, 1977, CMP filed its motion for summary judgment. On October 25, 1977, the presiding justice issued his final order in the case, granting the Commission's and Sobin's motions for dismissal for lack of subject-matter jurisdiction, adding: "By virtue of this action the other Motions become moot and need no comment." The allegations adduced to support CMP's motion for summary judgment in the 80B action cannot be treated as established facts because the Superior Court dismissed CMP's complaint for lack of subject-matter jurisdiction without even reaching its motion for summary judgment.

Also unfounded is CMP's contention that the facts stated in its verified section 305 complaint must be accepted as established. The Commission's answer to the section 305 complaint specifically states that the Commission is without sufficient knowledge to respond to CMP's allegations that it has never undertaken to serve any customers in the Town of Orrington. Since that allegation has the effect of a denial (Rule 8(b), M.R.Civ.P.), the question is not settled for purposes of the section 305 action.

Therefore, as the case is presented to us in the consolidated appeal, the question whether CMP has undertaken to serve customers in the Town of Orrington remains unresolved. That question may be difficult,[8] and it must be answered in the first instance by the Commission, which is vested with the expertise and fact-finding ability necessary for its resolution. We should not precondition enforcement of its information-gathering orders upon the making of such a finding, especially where other factual issues remain unresolved at the outset of the investigation. *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943). Only one of the four data requests in question directly pertains to the question of an undertaking by CMP at Orrington. The other three data requests concern complex technical and economic information about the production of electricity by CMP. A valid object of the investigation is to determine whether Bangor Hydro's rates and services to Sobin are reasonable.[9] Information developed from the other three data requests may be relevant to the question of the reasonableness of Bangor Hydro's rates and service. The investigation with respect to such matters should not be foreclosed at this time.

We conclude that critical questions of fact requiring the exercise of the Commission's expertise and fact-finding ability have not been determined. There is no basis for our departing from the accepted criteria set forth in Part IV(A) above, which we have adopted.

V

*Application of the Criteria for Review*

A. *Statutory Authority of the Commission to Order the Information from CMP; Scope of the Section 296 Investigation*

The Commission has acted pursuant to 35 M.R.S.A. § 296, which empowers the Commission to investigate summarily, with or without notice, when it

"believes that any rate or charge is unjust or unreasonable, or that any service is inadequate or cannot be obtained, or

---

8. *See* I B. Wyman, *Public Service Corporations*, chs. VI–IX (1911).

9. *See* Part V(B) of this opinion, below.

that an investigation of any matter relating to any public utility should for any reason be made . . . ."[10]

If the Commission becomes satisfied that a formal public hearing is warranted, it may provide therefor after giving notice of the investigation to the interested public utility.

CMP contends the subject matter of the Commission's investigation is limited to the relief specifically requested in Sobin's informal complaint and that the validity of the investigation thus depends on whether the Commission, under the applicable statutory and constitutional provisions, may grant the relief requested by Sobin. CMP says that Orrington is not within its service area and that any Commission decree would be illegal which directed CMP to supply power at CMP's Bucksport terminus for transmission to Orrington for use in Sobin's plant. CMP's main contention is that since the Commission's only possible purpose in requiring the data from CMP is to obtain information on which to base a decree that would be necessarily illegal, the orders requiring that information are themselves illegal. Thus, CMP attempts to bring before this Court a question of "coverage": the important and complex issues arising under 35 M.R.S.A. §§ 294, 2301, and 2302,[11] concerning the extent to which the Commission may interfere with the "territorial integrity" of public utilities.

However, the real issue is not whether the Commission has authority to order CMP to service the Sobin plant in Orrington, but whether it has the authority to compel CMP's response to the data requests. We conclude that the subject matter of the Commission's investigation is within its authority under section 296.

The possibility that one product of the investigation might conceivably be a Commission decree affecting CMP's territorial integrity is not a proper consideration for this Court at this stage of the proceedings. *Endicott Johnson Corp. v. Perkins,*

317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943).[12] Therefore, we have no occasion to address the issues of territorial integrity that CMP seeks to advance in this litigation.

Moreover, the investigation is not limited to just the relief requested by Sobin in its informal complaint. As is made clear by the Commission's "Notice of Investigation" of August 27, 1975, and its order of June 2, 1977, the investigation also involves questions of the reasonableness of Bangor Hydro's rates and service to Sobin and any other matter appropriate to the issues raised by Sobin's complaint. The possibility that those issues are interrelated with questions of the territorial integrity of the utilities concerned makes it especially inappropriate for the Court to approach this case in the manner suggested by CMP's arguments or to address questions that are not properly before us at this stage of the proceedings.

The immediate issue is the proper application of the first criterion for validity of administrative orders requiring information: whether the Commission had the statutory authority to compel CMP to produce the information sought in the data requests. Resolution of that issue requires a two-step inquiry: Was the subject matter of the investigation within the scope of 35 M.R.S.A. § 296? If so, did the Commission have the statutory authority to compel CMP to respond to the data requests?

Section 296 authorizes the Commission to investigate the justness or reasonableness of any rate or charge and the adequacy of any service provided by a public utility. The Commission's "Notice of Investigation" dated August 27, 1975, states that in addition to the "rates and service of Bangor Hydro-Electric Company to Sobin Chemicals, Inc.," the subject matter of 35 M.R.S.A. §§ 294, 2301, and 2302 will be a subject of inquiry. The Commission's order of June 2, 1977, states that the reasonableness of Bangor Hydro's rates to Sobin and the ade-

---

10. Section 296 is set forth in full in note 3, *supra.*

11. Set forth in note 2, *supra.*

12. See also Part IV(B) of this opinion, *supra.*

quacy of its service to Sobin will continue to be a subject of investigation. These aspects of the Commission's investigation are explicitly authorized by the reference in section 296 to "rates" and "service."

Section 296 also authorizes "an investigation of any matter relating to any public utility." The legislature has thereby granted the Commission broad powers of investigation in order that it may effectively carry out its regulatory functions. Pursuant to the broad grant of authority, the Commission has initiated an investigation of certain matters in addition to Bangor Hydro's rates and service. As the notice of investigation states and the order of June 2, 1977, explains in more detail, the Commission is also investigating whether it may properly order CMP to provide service to Sobin and whether it would have authority to do so. The order of June 2, 1977, also states that the Commission will investigate whether some other action is appropriate and any other matters which may arise.

■■■■ Since all those objects of the investigation are matters relating to public utilities, the subject matter of the Commission's investigation is within the broad scope of investigatory power granted by section 296. Such matters being within the scope of its statutory authority, the Commission is free to determine the order in which it addresses the objectives of its investigation. Whatever may be the wisdom of such a course, it is not unlawful for the Commission to inquire whether it ought to act with respect to a matter under investigation before it inquires whether it has authority so to act. *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943); *Newmark & Co. v. Wirtz*, 330 F.2d 576 (2d Cir. 1964).

Having decided that the subject matter of the inquiry is within the scope of section 296, we turn to the Commission's statutory authority to compel the production of information relevant to such matters.

To enable the Commission to carry out its investigative responsibilities, the legislature has granted it broad authority to require information from public utilities. 35 M.R.S.A. §§ 4, 6, 299. 35 M.R.S.A. § 4 provides:

"The commission shall have authority to inquire into the management of the business of all public utilities and shall keep itself informed as to the manner and method in which each is conducted; and shall have the right to obtain from any public utility all necessary information to enable the commission to perform its duties.

"Every public utility within the State shall furnish all reasonable facilities to the commission for the prompt and faithful discharge of its duties."

35 M.R.S.A. § 6 provides:

"Every public utility shall furnish the commission with all information necessary to carry into effect chapters 1 to 17. In case it is unable to furnish such information, it shall give a good and sufficient reason for such failure, and the reason for such failure shall be verified by an officer, owner or agent of such public utility and returned to the commission at its office within the time fixed by the commission."

35 M.R.S.A. § 299 provides, in part:

"Each of the commissioners, for the purposes mentioned in chapters 1 to 17, may hold hearings and conduct investigations, administer oaths, certify to official acts, issue subpoenas, compel the attendance of witnesses and the production of books, accounts, papers, documents and testimony, punish by fine and imprisonment for contempt and issue all processes necessary to the performance of the duties of the commission."

*See also* 35 M.R.S.A. §§ 5, 7, 60.

■■ Thus, a public utility must provide the Commission with information that will enable it to perform its duties and carry into effect chapters 1 to 17 of title 35.[13] An authorized investigation under section 296 is one such responsibility of the Commission, justifying it in requiring information, reasonably relevant to the inquiry, that is

13. Chapters 1 to 17 include 35 M.R.S.A. §§ 1–360.

possessed by a public utility. We hold that the Commission is authorized by statute to compel CMP to provide information relevant to the subject matter of the investigation.

## B. *Relevance*

We turn to the question whether the information requested by the Commission is relevant to the subject of its inquiry. The Supreme Court has formulated in slightly different ways its relevancy test for information demanded in federal investigations: "not plainly . . . irrelevant to any lawful purpose," *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943); "relevant to the inquiry," *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946); "reasonably relevant," *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); "may be relevant to the purpose," *United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).[14] For reasons about to be discussed, we are not required in this case to choose among the variant formulations of the test.

The burden of proving that a Commission order is unreasonable, unjust or unlawful is on the party seeking to set aside the order. 35 M.R.S.A. § 307. If a Commission order to produce information is challenged for lack of relevance of the information to the subject matter or purpose of the inquiry, we interpret section 307 as placing the burden of showing irrelevance on the party challenging the order. The pleadings in this case do not directly raise any issue concerning the relevance of the information sought by the Commission to the subject matter or purpose of its section 296 investigation. The Commission has asserted such relevance in its brief on appeal. Relying entirely on its contention that the

Commission's orders seek information not within its statutory authority to demand, CMP has not attempted to meet its burden of proof with respect to relevance. However, since the present case is the first in which the Law Court has addressed fully the scope of the Commission's powers to require information pursuant to a section 296 investigation, considerations of fairness suggest that, for purposes of this case, we examine the Commission's data requests to see whether they demand information that is plainly irrelevant to the investigation.

The first, second, and fourth data requests concern highly technical and economic information concerning the availability and cost of power to and from CMP. The requests concern such matters as heat rate curves, hourly load data, energy output, retail fuel charges, annual pondage, CMP's relationship to the New England Power Pool Agreement, interruptible power load, and hydro-electric generation data. Such information appears relevant to CMP's capacity and ability to provide electric service to Sobin—a matter we have already held to be within the scope of the Commission's authority to investigate under section 296.[15]

The information sought by those three data requests also pertains to another subject of the Commission's investigation, namely, the reasonableness of Bangor Hydro's rates and adequacy of its service to Sobin. The rates and service of one electrical company are not plainly irrelevant to an investigation of the reasonableness of the rates and service of another electrical company. *See New England Tel. & Tel. Co. v. State*, 95 N.H. 353, 64 A.2d 9, 17 (1949).

The third data request states:

"Please list all municipalities in which your company furnishes service to one or more customers and which municipalities are not included in the charter authority of your company. In each case please cite the authority for such service."

---

14. For a discussion of the different formulations of the test, see *Federal Trade Comm'n v. Texaco, Inc.*, 180 U.S.App.D.C. 390, 401 n. 23, 555 F.2d 862, 873 n. 23 (1977), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072. *See generally* 1 F. Cooper, *State Administrative*

*Law* 300–02 (1965); L. Jaffe, *Judicial Control of Administrative Action* 118–19 (1965); Note, 71 *Harv.L.Rev.* 1541, 1544 (1958); Note, 69 *Yale L.J.* 131, 136 (1959).

15. See Part V(A) of this opinion.

The information sought by this data request may be related to the question whether CMP has undertaken to serve customers in the Orrington area. We have already found that this question is not yet resolved and remains a permissible subject of inquiry within the scope of the Commission's section 296 investigation. The information sought by the third data request is not plainly irrelevant to that question.

■ Having briefly examined the data requests to see whether they comport with at least minimal standards of relevance, we conclude that the information requested is not plainly irrelevant to proper subjects of inquiry in the Commission's investigation. Application of section 307 to the question of relevance is not unjust in this case.

### C. Reasonableness

The requirement of "reasonableness" of federal administrative subpoenas, announced in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208–09, 66 S.Ct. 494, 90 L.Ed. 614 (1946), has two aspects: the demand must not be disproportionately or unduly burdensome, and it must not be unreasonably broad. See Federal Trade Comm'n v. Texaco, Inc., 180 U.S.App.D.C. 390, 410, 555 F.2d 862, 882 (1977), cert. denied, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072. Federal cases hold that this burden is not easily overcome where, as here, the agency's inquiry is authorized by statute and the information sought is relevant to the purpose of the inquiry. Federal Trade Comm'n v. Texaco, Inc., supra, 180 U.S.App.D.C. at 410, 555 F.2d at 882; Securities & Exchange Comm'n v. Brigadoon Scotch Distributing Co., 480 F.2d 1047, 1056 (2d Cir. 1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974); Adams v. Federal Trade Comm'n, 296 F.2d 861, 867 (8th Cir. 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962).

Under the plain language of 35 M.R.S.A. § 307, the burden of proving that the Commission's orders are "unreasonable" is on CMP. CMP has submitted an affidavit of one of its officers that responding to the data requests would require from 640 to 1280 person-hours of work. We cannot find as a matter of law that this requirement makes compliance with the orders unduly burdensome for CMP.

■ In the context of an administrative agency's demand for information, undue burdensomeness requires more than a mere showing that compliance with the order would be expensive or inconvenient. 1 F. Cooper, State Administrative Law 303 (1965). Compliance must threaten to disrupt or seriously hinder normal operations of a business. Federal Trade Comm'n v. Texaco, Inc., supra, 180 U.S.App.D.C. at 410, 555 F.2d at 882. No such threat is asserted in this case.

Whatever the wisdom or fairness of requiring CMP, in effect, to absorb the costs it must incur in an investigation instigated by a customer of Bangor Hydro, the resulting burden is unavoidable under the applicable statutes. Title 35 grants the Commission broad authority to compel the production of information from public utilities but makes no provision concerning the cost of complying with orders issued pursuant to that authority. In effect, the legislature has determined that such expenses are to be absorbed by public utilities as a cost of doing business.

■ To be not unreasonably broad, an administrative order requiring information must be sufficiently specific to enable those on whom the demand is made to identify the data required and the manner in which the information is to be supplied. Newmark & Co. v. Wirtz, 330 F.2d 576, 578 (2d Cir. 1964). None of the four data requests appears to violate the standard of reasonableness by being too broad. CMP has not sustained its burden of proving, under section 307, that the Commission's orders were unreasonable.

### VI

### Effect of the 1976 Bangor Hydro Rate Increase

Bangor Hydro contends that the Commission's final decision in its 1976 rate case, Re

*Bangor Hydro-Electric Co.,* 16 P.U.R. 4th 244 (Me.Pub.Util.Comm'n 1976), precludes any further investigation into the reasonableness of Bangor Hydro's rates in U. # 3118. Apparently, Bangor Hydro requests this Court to apply principles of res judicata and collateral estoppel to an investigatory proceeding being conducted by the Commission. We decline to interfere with the investigation on such a basis.

Federal courts have refused to recognize principles of res judicata and collateral estoppel as defenses to the enforcement of an administrative subpoena. *Federal Trade Comm'n v. Texaco, Inc.,* 180 U.S.App.D.C. 390, 555 F.2d 862 (1977), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072; *Federal Trade Comm'n v. Markin,* 532 F.2d 541 (6th Cir. 1976); *Federal Trade Comm'n v. Feldman,* 532 F.2d 1092 (7th Cir. 1976). We find the reasoning of those cases persuasive.

■ Our review of a Commission order to produce information is limited to considering whether the investigation is within the Commission's statutory authority, whether the information sought is relevant to that inquiry, and whether the request is reasonable. Our review does not encompass questions about the Commission's ultimate authority to take particular hypothetical actions with respect to the matter under investigation. Similarly, it does not encompass questions about whether the Commission might ultimately take an action that would be precluded as a matter of res judicata by its decision in a prior proceeding. Considerations of res judicata and collateral estoppel are "even more inappropriate in the investigatory context than questions of statutory coverage." *Federal Trade Commission v. Texaco, Inc., supra,* 180 U.S.App. D.C. at 407–08, 555 F.2d at 879–80.[16]

Even if we were disposed to apply principles of res judicata or collateral estoppel to the Commission's order to respond to data requests, we would be constrained to find no basis for the application of such principles to the section 69 and section 296 proceedings. Issues are involved in the Commission's section 296 investigation which were not necessarily within the scope of its rate investigation of Bangor Hydro under section 69. Such issues include the adequacy of Bangor Hydro's service to Sobin, its capability of meeting Sobin's additional electricity requirements necessitated by its future plant expansion, the reasonableness of the rates for such anticipated additional electricity, possible legislative remedies, and the propriety and scope of any Commission action under 35 M.R.S.A. §§ 294, 2301 and 2302. To the extent that the section 296 investigation involves such issues, the Commission's decree in the section 69 investigation has no controlling effect.

The only issue Bangor Hydro might arguably contend is common to both the section 296 investigation and the section 69 investigation concerns the justness and reasonableness of Bangor Hydro's rates. Although the reasonableness of Bangor Hydro's rates is in general terms a subject of both investigations, closer analysis shows that the foci of the two investigations are quite different and that they differ in "material time-frame perspective." *See New England Tel. & Tel. Co. v. Public Utilities Comm'n,* Me., 354 A.2d 753, 769 (1976).

In the section 69 investigation the Commission studied the reasonableness of Bangor Hydro's proposed rates. The Commission found the proposed rates to be unjust and unreasonable and ordered substituted therefor a new schedule of permanent rates, approved November 12, 1976, granting Bangor Hydro a smaller rate increase than it had originally sought. The Commission found this substituted schedule of permanent rates to be just and reasonable. "The essence of a *permanent* rate . . . is that it is to be operative for an *indeterminate* future period." *Id.* Thus, the effect of the Commission's decision in the section

---

16. On similar grounds we reject Bangor Hydro's argument that the Commission exceeds its statutory authority because a section 69 rate proceeding and section 296 proceeding are "functional equivalents" with respect to issues concerning reasonableness of rates and are therefore "mutually exclusive."

69 proceeding is that the substituted rates are just and reasonable rates for Bangor Hydro for an indeterminate future period commencing November 12, 1976. Those rates would remain just and reasonable for Bangor Hydro until such time as the Commission might find them to be unjust or unreasonable or find that a new schedule of rates is just and reasonable. Thus, the reasonableness of Bangor Hydro's rates remained properly an area of investigation for the Commission after November 12, 1976.

 The fact that a utility is currently operating under rates which the Commission has found to be just and reasonable for an indeterminate future period does not preclude the Commission from conducting additional inquiry into the justness and reasonableness of such rates. This is so because the determination by the Commission of just and reasonable rates is essentially a legislative function. *New England Tel. & Tel. Co. v. Public Utilities Comm'n,* Me., 390 A.2d 8, 55 (1978). Therefore, the Commission is not bound in its section 296 investigation by its determination in the prior section 69 proceeding as to the justness and reasonableness of Bangor Hydro's rates. *See* Leventhal, J., concurring, in *Federal Trade Comm'n v. Texaco, Inc., supra,* 180 U.S.App.D.C. at 421–22, 555 F.2d at 893–94; *State v. Alabama Public Service Comm'n,* 293 Ala. 553, 307 So.2d 521 (1975). *Cf. State ex rel. Utilities Comm'n v. Edmisten,* 294 N.C. 598, 242 S.E.2d 862 (1978).

## VII

### CMP's Appeal from Superior Court

Pursuant to Justice Pomeroy's procedural order of November 7, 1977, CMP's appeal from the Superior Court's dismissal of its Rule 80B complaint was consolidated with its section 305 action for resolution of the issues arising from the investigatory proceedings of the Commission. We have upheld the lawfulness of all the Commission's actions challenged in CMP's section 305 complaint.

In its Rule 80B action, CMP challenged in Superior Court the same Commission actions on the grounds that they were unlawful and beyond the Commission's jurisdiction. The only issue presented by CMP's complaint in Superior Court that was not raised in its section 305 complaint was the designation of CMP as a party to the Commission's proceedings. The Superior Court did not reach the merits of CMP's claims because it dismissed the Rule 80B complaint for lack of subject matter jurisdiction.

In its appeal from the Superior Court's decision, CMP requests that this Court reverse the dismissal and hold that the Superior Court had jurisdiction to entertain the substantive claims of its Rule 80B complaint.

We do not reach that question because our decision on the merits of the section 305 action moots all substantive issues brought before the Superior Court. Because we conclude that CMP must respond to the data requests regardless of whether it is denominated a "party," it becomes immaterial whether CMP was properly named a party to the Commission's investigation.

 There being no issues remaining for the Superior Court to determine on the merits, CMP's appeal from that court's dismissal of its Rule 80B complaint must be denied for mootness.

The entries are:

Judgment for the defendants Public Utilities Commission, IMC Chemical Group, Inc., and Bangor Hydro-Electric Company on the section 305 complaint.

Motion of Public Utilities Commission to dismiss section 305 complaint (under doctrines of "ripeness" and "primary jurisdiction" and for failure to state a claim), denied.

Motion of Public Utilities Commission to dissolve order of stay and preliminary injunction, issued by Justice Pomeroy on November 3, 1977, granted.

Motion of Public Utilities Commission for assessment of double costs, denied.

Appeal of Central Maine Power Company from Superior Court dismissal of Rule 80B complaint, dismissed as moot.

McKUSICK, C. J., and DELAHANTY, J., did not sit.

DUFRESNE, A. R. J., sat by assignment.